**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MICHAEL WELBORN and | ) | |
| REBECCA WELBORN, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:22-CV-92-PPS-JPK |
| | ) | |
| ETHICON INC., and ANONYMOUS | ) | |
| HEALTHCARE PROVIDERS A-F, | ) | |
| | ) | |
| *Defendants.* | ) | |

**REPORT AND RECOMMENDATION ON [DE 21]**
**and**
**OPINION AND ORDER ON [DE 5] AND [DE 16]**

This action was filed in the Superior Court of Portage County, Indiana by Michael Welborn

("Plaintiff") and his spouse, Rebecca Welborn (collectively "Plaintiffs"), and removed to this

Court by Defendant Ethicon Inc. ("Ethicon"[1]). Currently before the Court is Plaintiffs' motion to

remand. [DE 21]. The motion to remand was referred to the undersigned by the presiding District

Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* [DE 38]. Also

before the Court is a motion to sever filed by Ethicon [DE 5], and a motion to stay [DE 16] filed

by the other defendants named in the complaint—Anonymous Healthcare Providers A, B, C, D,

E, and F (collectively the "Anonymous Defendants"). For the reasons discussed below, the Court

recommends that Plaintiffs' motion to remand be granted as to the requested relief of a remand

---

[1] Although the case caption of the complaint refers to two defendants with the Ethicon name
("Ethicon" and "Ethicon, Inc."), the notice of removal states that "'Ethicon' is not an independent
business entity. Therefore it is not a proper party to this lawsuit and can be disregarded." [DE 1 at
1 n.1; *see also id.* ¶ 11].

and denied as to the requested relief of fees and costs. The Court denies the motion to sever and the motion to stay.

## BACKGROUND[2]

The complaint alleges that, on March 6, 2020, Plaintiff underwent a thoracotomy, lower lobectomy, and mediastinal lymph node dissection on his right lung, and, as a result of the negligence of his healthcare providers, was left permanently paralyzed from the chest down. [DE 6 ¶¶ 46-47; DE 22 ¶¶ 2, 4-5]. Under the Indiana Medical Malpractice Act ("the MMA" or "the Act"), Ind. Code § 34-18-1 *et seq.*, "before a party may commence a medical malpractice action against a health care provider in an Indiana trial court, the party's proposed complaint must first be presented to a medical review panel through the Department of Insurance, and the panel must render an opinion as to whether the defendant failed to act within the appropriate standard of care." *Lorenz v. Anonymous Physician #1*, 51 N.E.3d 391, 395–96 (Ind. App. 2016) (citing Ind. Code § 34–18–8–4, § 34–18–10–22). In compliance with the Act, on August 19, 2020, Plaintiffs filed a proposed complaint with the Indiana Department of Insurance ("IDOI") naming three healthcare providers involved in his surgery who allegedly bore responsibility for the outcome of that surgery. [DE 22 ¶ 6].

Upon Plaintiffs' filing of the proposed complaint, the IDOI convened a medical review panel to consider Plaintiffs' allegations of medical malpractice. At the last hearing on this matter, the parties reported that the panel had not yet issued a decision. As part of these proceedings before the IDOI, Plaintiffs served interrogatories asking, among other things, whether the responding health care provider contended that Plaintiff's injuries as alleged in the proposed complaint were

---

[2] The facts stated in this section are for background purposes only. They are drawn from the allegations in the complaint and the documents submitted with Plaintiffs' motion to remand.

caused in whole or in part by a defect in a drug, instrument, implement or other type of product, and if so, to identify the product. [DE 24-6 at 3-4]. On December 16, 2020, one of the healthcare providers responded to that interrogatory by identifying Surgicel Absorbable Hemostate ("Surgicel"), a medical product manufactured and distributed by Ethicon. [*Id.* at 4]. Plaintiffs then served supplemental interrogatories requesting further information regarding the claim that Surgicel was responsible in whole or in part for Plaintiff's injuries. [DE 24-7]. On February 25, 2022, the healthcare provider in question responded by stating that discovery was ongoing but "the medical records indicate that the Surgicel was found to be causing the spinal compression" and that, as part of their investigation of the failed surgery, the healthcare providers may have filed a report stating that a defective medical product caused the injury. [*Id.* at 3, 5, 6]. Following this last disclosure, on March 3, 2022, Plaintiffs filed an amended proposed complaint before the medical review panel adding three additional healthcare providers to their claims. [DE 24-8]. Around the same time, Plaintiffs also filed a complaint in state court alleging medical malpractice and related claims against Plaintiff's healthcare providers (Counts I-IV) and product liability claims against Ethicon (Counts V-VII). An additional count in the complaint (Count VIII) is against both Ethicon and Plaintiff's healthcare providers seeking damages for loss of consortium on behalf of Plaintiff's wife.

Under the MMA, a trial court "does not generally have jurisdiction over a medical malpractice action until proceedings before the Department of Insurance conclude. However, the Act does give a trial court limited authority to assert jurisdiction over threshold issues while a proposed complaint is pending before the medical review panel." *Lorenz*, 51 N.E.3d at 396 (noting that the trial court may set a trial date, dismiss the action for failure to prosecute, compel discovery, or "preliminarily determine an affirmative defense or issue of law or fact" (citing *Haggerty v.*

*Anonymous Party 1*, 998 N.E.2d 286, 294 (Ind. App. 2013), and Ind. Code § 34–18–8–7(a)(3), § 34–18–8–8, § 34–18–11–1(a)(2), and § 34–18–11–4(a)(1))). If a patient files a contemporaneous action in court, the MMA provides that the complaint must not contain "information that would allow the defendant provider(s) to be identified" until an opinion is given by the medical review panel. *Kho v. Pennington*, 875 N.E.2d 208, 209 (Ind. 2007); *see* Ind. Code § 34-18-8-7(a)(1). In compliance with this confidentiality requirement, Plaintiffs' state court complaint did not identify the healthcare providers who they alleged were liable for Plaintiff's injuries, but instead referred to those providers in the case caption and body of the state court complaint as "Anonymous Healthcare Providers A–F."

Ethicon was served with the state court complaint on March 15, 2022 [DE 1 ¶ 46], and it removed the case to this Court on April 14, 2022. All of the Anonymous Defendants have appeared in this action and participated in the proceedings.

## DISCUSSION

## I.   <u>MOTION TO REMAND [DE 21]</u>

The following constitutes the undersigned's combined proposed findings and recommendations under 28 U.S.C. § 636(b)(1)(C) regarding Plaintiffs' motion to remand.

### A.   LEGAL PRINCIPLES GOVERNING REMOVAL

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C.

§ 1446(a)). Once a case is removed to federal court, the district court must remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

The removing defendant, as the party invoking federal jurisdiction, bears the burden of establishing that the district court has subject matter jurisdiction over the case. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802-03 (7th Cir. 2009). To satisfy this burden, the removing defendant must show that federal court jurisdiction existed "both at the time of the original filing in state court and at the time of removal." *Altom Transport, Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). "Federal courts must construe the removal statute narrowly, which creates a strong presumption in favor of remand." *Wolf v. Kennelly*, 540 F. Supp. 2d 955, 959 (N.D. Ill. 2008) (internal quotation marks and citation omitted); *see also Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715 (7th Cir. 2000) (Ripple, C.J., concurring) ("The removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal." (citing cases)). This protects the plaintiff's right to choose his or her own forum. *See In re Amino Acid Lysine Antitrust Litig.,* 918 F. Supp. 1181, 1185 (N.D. Ill. 1996) ("While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing[.]" (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)); *see also Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 758 (7th Cir. 2009) (uncertainties regarding the existence of federal court jurisdiction upon removal should be resolved "in favor of the plaintiff's choice of forum in state court").

Although not directly relevant to the issues raised by the parties, the Court also notes that there are non-jurisdictional procedural requirements a removing defendant must satisfy. One such requirement is that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). While there are exceptions to this rule that allow for removal without the consent of all defendants, the Seventh Circuit has held that a notice of removal "filed by less than all of the named defendants is considered defective if it fails to contain an explanation for the absence of co-defendants." *N. Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 272 (7th Cir. 1982) (citations omitted); *see also Simmons ex rel. Simmons v. COA, Inc.,* No. 2:12 CV 39, 2012 WL 1947172, at *1 (N.D. Ind. May 30, 2012) ("A petition that omits the consent of all parties and does not provide an explanation is defective on its face."). Here, the notice of removal refers to the Anonymous Defendants in arguing why their citizenship should be disregarded in assessing the court's diversity jurisdiction, but it does not reference the consent requirement or explain why Ethicon was excused from obtaining those defendants' consent to removal.[3]

In addition, Anonymous Healthcare Provider E had served Ethicon with a notice of appearance in the state court action prior to Ethicon's removal. *See* [DE 1 ¶ 47; DE 1-1 at 41]. Yet the notice of removal omits Anonymous Healthcare Provider E, as well as the other Anonymous

---

[3] In another case removed on the basis of similar facts, the court made note of this defect in the notice of removal. *See Brauer v. Stryker Corp.*, No. 2:13-cv-442-JMS-WGH, 2014 WL 29069, at *1 (S.D. Ind. Jan. 3, 2014) ("On a related note, … Stryker's Notice of Removal does not indicate whether Dr. Doe consents to Stryker's removal of Plaintiff's case to federal court, likely because Stryker believes such consent was unnecessary in light of Dr. Doe's anonymous status in Plaintiff's state court complaint. Stryker has cited no authority for this position."); *compare Gilley v. Medtronic, Inc.,* No. 1:11-cv-892-WTL-DKL, Dkt. #23, slip op. at 1 (S.D. Ind. Sept. 8, 2011) (where it was noted that "[a]ll of the Defendants, including Hospital Doe, consented to the removal").

Defendants,[4] from the certificate of service [DE 1 at 19]. *See* Fed. R. Civ. P. 5(a) (providing that a pleading filed after the original complaint "must be served on every party" unless a party is in default for failing to appear); 28 U.S.C. § 1446(d) (stating that the removing defendant "shall give written notice thereof to *all* adverse parties" (emphasis added)).

### B.   THE PARTIES' ARGUMENTS

Plaintiffs argue that the Court does not have subject matter jurisdiction over their state court complaint and that the case therefore must be remanded pursuant to 28 U.S.C. § 1447(c). Ethicon's notice of removal alleges that the Court has diversity jurisdiction under 28 U.S.C. § 1332. For a federal court to have diversity jurisdiction, there must be complete diversity between the plaintiffs and the defendants and the amount in controversy must exceed the jurisdictional minimum of $75,000.00 exclusive of interest and costs. *See Owen Equip. & Recreation Co. v. Kroger*, 427 U.S. 365 (1978). Plaintiffs concede that their complaint puts into controversy the jurisdictional minimum amount. [DE 21 at 1].[5] But Plaintiffs argue that a remand is required

---

[4] It is unclear whether all of the Anonymous Defendants had appeared in the state court action by the time of Ethicon's removal. The state court record included with Ethicon's notice of removal suggests they had not, as those documents do not include any filing by the Anonymous Defendants other than the appearance form of Anonymous Healthcare Provider E. [DE 1 ¶ 47]. But the Anonymous Defendants state in their motion for a stay that they had each filed a similar stay motion in the state court prior to Ethicon's removal, and that the state court had set a hearing date for those motions. [DE 16 ¶ 9]. If Ethicon's statement in the notice of removal that Ethicon attached only those documents in the state court record with which it had been served is accurate, then the Anonymous Defendants must have filed appearances and a motion in state court without having served Ethicon with those papers, and the hearing in state court was set also without notice to Ethicon.

[5] That concession, however, was not made until *after* Ethicon removed this action and therefore could not have been the basis for the removal's jurisdictional allegations regarding the amount in controversy. Instead, the notice of removal cites to the complaint, asserting that it is "facially evident" from Plaintiffs' allegations in that document regarding severe personal injuries that the amount in controversy exceeds the jurisdictional minimum. [DE 1 ¶ 44]. Although Plaintiffs' subsequent concession in their motion to remand moots the issue, it is worth noting that the Seventh Circuit has held that, to avoid premature removals, the state court complaint or other paper on which the defendant bases its removal "must specifically disclose the amount of monetary

because "complete diversity" of citizenship is lacking. "Complete diversity" means "that none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen[]." *Howell by Goerdt v. Tribune Entm't Co.,* 106 F.3d 215, 217 (7th Cir. 1997). It is undisputed that Plaintiffs are citizens of Indiana and that Ethicon is a citizen of New Jersey. [DE 1 ¶¶ 9-10]. Plaintiffs argue, however, that the complete diversity requirement is not satisfied because the Anonymous Defendants, like Plaintiffs, are Indiana citizens.

Plaintiffs have presented unrefuted evidence to support their contention that the Anonymous Defendants are Indiana citizens. *See* [DE 24]. Ethicon argues, however, that the Court should disregard the Anonymous Defendants' citizenship in assessing the Court's subject matter jurisdiction for three reasons: (1) those defendants are identified in the complaint by a "fictitious name" within the meaning of 28 U.S.C. § 1441(b)(1); (2) Plaintiffs' medical malpractice claims are "fraudulently misjoined" with their product liability claims; and (3) the Court should exercise its discretionary power under Federal Rule of Civil Procedure 21 to drop the Anonymous Defendants from the case by severing Plaintiffs' claims against those parties and remanding them to state court. The Court considers each of Ethicon's arguments in turn.

### 1.   FICTITIOUS NAME ARGUMENT

"Although the rule established by the Supreme Court in *Erie Railroad Company v. Tompkins* dictates that forum state law will provide the substantive rules to govern decision in a

---

damages sought." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). The court further noted that a defendant wishing to remove a complaint without such a disclosure should use other means to seek that information, such as jurisdictional requests for admission, prior to removal. *Id.* at 824 n.4. The cases Ethicon cites in the notice of removal, *see* [DE 1 ¶ 44], all predate *Walker*. Under the standard articulated in *Walker*, it appears that allegations of "permanent and severe personal injuries" in a state court complaint by themselves may no longer be sufficient to trigger a right to remove under the diversity statute. *See Redfield v. Uthe,* No. 2:20-cv-199-TLS-JPK, 2021 WL 2451906, at *3 (N.D. Ind. June 15, 2021).

diversity suit, it is well-settled that, for purposes of removal, federal law determines who is a plaintiff and who is a defendant." Wright & Miller, 14C FED. PRAC. & PROC. JURIS. § 3723 (Rev. 4th ed.). Relevant to this case, federal law provides that, "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Ethicon's first argument is that the citizenship of the Anonymous Defendants should be disregarded because they are sued under "fictitious names" within the meaning of § 1441(b)(1), an argument supported by a number of cases Ethicon cites. *See Estate of Ronald Hoholek,* No. 2:14-cv-405, 2014 WL 7205586, at *2 (N.D. Ind. Dec. 17, 2014); *Ossim v. Anulex Techs., Inc.*, No. 1:14-cv-254-TWP-DKL, 2014 WL 2876760, at *1 (S.D. Ind. June 24, 2014) ("*Ossim I*"), *reconsideration denied*, 2014 WL 4437501, at *1 (S.D. Ind. Sept. 9, 2014) ("*Ossim II*"); *Shepherd v. Covidien, Inc.*, No. 3:12-cv-14-TLS-CAN, 2014 WL 1207516, at *1 (N.D. Ind. Mar. 24, 2014); *Beaty v. I-Flow Corp.,* No. 1:09-cv-383-WTL-TAB, 2009 WL 1689395, at *1 (S.D. Ind. June 16, 2009); *Thornburg v. Stryker Corp.*, No. 1:05-cv-1378-RLY-TAB, 2006 WL 211952, at *1-2 (S.D. Ind. Jan. 27, 2006), *report and recommendation adopted*, No. 1:05-cv-1378-RLY-TAB, 2006 WL 8459784 (S.D. Ind. June 21, 2006); *Baker v. Scott*, No. 1:03-cv-1426-RLY-TAB, Dkt. #57, slip op. at 8-10 (S.D. Ind. July 28, 2004) [DE 35-1]; *Bush v. Hosp. 1*, No. 1:00-cv-1818-LJM-VSS, Dkt. #16, slip op. at 2-3 (S.D. Ind. Jan. 22, 2001) [DE 35-2].

Plaintiffs counter by citing another group of cases that hold generally, contrary to the cases cited by Ethicon, that healthcare providers who are named anonymously pursuant to the requirements of the MMA are not fictitious defendants within the meaning of § 1441(b)(1). *See Goul v. Combe Inc.*, No. 1:21-cv-771-TWP-TAB, 2021 WL 3772013, at *3-5 (S.D. Ind. Aug. 25, 2021); *Richmann v. Anonymous Healthcare Provider #1*, No. 3:16-cv-112-JVB, Dkt. #46, slip op.

at 3-4 (N.D. Ind. May 18, 2016) [DE 25-1]; *Johnson v. Globus Med., Inc.,* No. 1:14-cv-730-SEB-MJD, 2014 WL 5323709, at *1-3 (S.D. Ind. Oct. 16, 2014) ("*Johnson I*"), *report and recommendation adopted*, No. 1:14-cv-730-SEB-MJD, 2015 WL 71035, at 3-7 (S.D. Ind. Jan. 5, 2015) ("*Johnson II*"); *Brauer*, 2014 WL 29069, at *1; *Miller v. Anonymous Corp. A*, 1:12–CV–562–TWP–DML, 2012 WL 3236304, at *1-2 (S.D. Ind. Aug. 7, 2012); *Wagner v. Mizuho Orthopedic Sys., Inc.*, No. 1:11-cv-433-TWP-MJD, 2012 WL 1564133, at *1 (S.D. Ind. Apr. 30, 2012), *report and recommendation re: order to show cause*, Dkt. #79, slip op. (S.D. Ind. June 15, 2012), *order adopting report and recommendation*, Dkt. #80 (S.D. Ind. July 5, 2012); *Caywood v. Anonymous Hosp.*, 856 F. Supp. 2d 1001, 1002-03 (S.D. Ind. 2012) ("*Caywood I*"), *entry on appeal of magistrate judge's decision*, No. 1:11-cv-1313-TWP-MJD, 2012 WL 3264572, at *2 (S.D. Ind. Aug. 9, 2012) ("*Caywood II*"); *Gilley v. Medtronic, Inc.*, No. 1:11-cv-892-WTL-DKL, Dkt. #23, slip op. at 2 (S.D. Ind. Sept. 8, 2011); *see also Ropp v. Striker Corp.*, No. 1:10-cv-0008, 2010 WL 3326964, at *1 (S.D. Ind. Aug. 24, 2010) ("*Ropp I*") (granting the plaintiff's motion to amend/correct complaint to add anonymous defendants), *order to show cause*, No. 1:10-cv-0008-JMS-MJD, Dkt. #41, slip op. at 1 (S.D. Ind. Nov. 23, 2010) ("*Ropp II*") (directing anonymous defendants to state their citizenship for purposes of diversity jurisdiction), *order in response to show cause order*, No. 1:10-cv-0008-JMS-MJD, 2011 WL 304770, at *2 (S.D. Ind. Jan. 26, 2011) ("*Ropp III*") (remanding action to state court).[6]

---

[6] Technically, *Ropp* did not involve application of § 1441(b)(1) because the anonymous defendants were added to the complaint after the case was removed from state court. But the fictitious versus anonymous question was before the court based on Seventh Circuit precedent that mirrors § 1441(b)(1) for cases initiated in federal court pursuant to which the citizenship of certain John Doe defendants will not be considered by the court in assessing whether there is diversity jurisdiction. *See Howell*, 106 F.3d at 218. In ordering the anonymous defendants to disclose their citizenship, the *Ropp* court cited cases addressing § 1441(b)(1) (*Thornburg* and *Bush*), as well as Seventh Circuit law discussing John Doe defendants. *See Ropp II*, Dkt. #41, slip op. at 3-4.

As far as the Court can tell, the Seventh Circuit has not addressed the issue of the relationship between the anonymity requirement for healthcare providers in the MMA and the right of a non-healthcare provider co-defendant to remove the plaintiff's state court complaint based on allegations of diversity of citizenship. The Court has considered the district court cases on this issue cited by the parties, however, and agrees with the courts that have concluded that the citizenship of a healthcare provider defendant who is known to the plaintiff but simply cannot be identified by name in the state court complaint because of the requirements of the MMA is *not* a party sued under a "fictitious name" within the meaning of § 1441(b)(1).

Ethicon relies on principles of statutory construction in arguing to the contrary. According to Ethicon, "Section 1441(b) does not provide any exceptions. Rather, it states in unambiguous terms that the citizenship of defendants sued under fictitious names must be disregarded for purposes of removal." [DE 35 at 3]. It is certainly true that "[i]f the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (citing *River Rd. Hotel Partners, LLC v. Amalgamated Bank,* 651 F.3d 642, 649 (7th Cir. 2011)). But "the plain language of § 1441 does not settle the matter in favor of [Ethicon]." *Caywood I,* 856 F. Supp. 2d at 1003.

When courts refer to the unambiguous language of a statute, they mean the "ordinary, contemporary, common meaning" of the words at issue "when the statute was enacted." *Melvin*, 948 F.3d at 852. Ethicon asserts that the statutory language "fictitious name" has a plain and ordinary meaning, but it provides no dictionary or other source references to support that assertion. *See id*. (the plain and ordinary meaning of a word is "often" determined "by referencing contemporary dictionaries"). Instead, Ethicon cites the *Baker* decision for its plain meaning argument. In that case, the court found that, "[i]n drafting [§ 1441(b)(1)], Congress provided a

11

directive to courts without exceptions or limitations." *Baker*, Dkt. #57, slip op. at 8. Yet at the same time, the court recognized that the typical "fictitious name" situation was not exactly the same as the anonymous defendants under the MMA, observing that "this case presents a unique situation in that all parties know the actual identity of 'Anonymous Doctor' and 'Anonymous Hospital.'" *Id.* at 8-9. Despite this acknowledgement of a difference between the anonymous defendant situation and a case with a John Doe defendant, the court held that the difference "does not provide a reason to depart from the clear mandate Congress set forth in 28 U.S.C. § 1441(a) [now codified at § 1441(b)(1)]—that defendants sued under fictitious names shall be disregarded for purposes of removal." *Id.* at 9. In other words, instead of acknowledging that the anonymous defendant situation presented an ambiguity, the court reasoned perhaps somewhat in reverse—i.e., the court stated that the statute was unambiguous, so there was no exception for the "unique situation," without confronting the threshold question of whether the "unique situation" in question might mean that the statute did not unambiguously cover it.[7] Of course, today we also have the

---

[7] In finding a "clear mandate" in § 1441, the *Baker* court declined to follow a line of cases that actually deal with circumstances somewhat distinguishable from the anonymous defendant situation. The cases in question involve an exception to the fictitious name rule where the identity of a John Doe defendant is not known by the plaintiff but may be known by the co-defendant. *See Baker*, Dkt. #57, slip op. at 8 (discussing *Marshall v. CSX Transp. Co.*, 916 F. Supp. 1150, 1152 (M.D. Ala. 1995) ("where a plaintiff's complaint provides a description of a fictitious defendant in such a way that his or her identity cannot reasonably be questioned, the court should consider the citizenship of the fictitious defendant"), and *Tompkins v. Lowe's Home Ctr., Inc.*, 847 F. Supp. 462, 464 (E.D. La. 1994) (recognizing exception to disregarding the citizenship of defendants with fictitious names where the plaintiff's allegations give the named defendant "a definite clue about the identity of a fictitious defendant")). The exception applied in these cases has been repudiated by more recent case law pursuant to a clear–mandate argument. *See Farrow v. Securian Fin. Grp., Inc.*, No. 1:19-cv-04298-WMR, 2020 WL 4557790, at *4 (N.D. Ga. Feb. 26, 2020) (observing that "the 'definite clue' line of authorities … is no longer regarded as good law" (internal quotations and citation omitted), citing *Smith v. Comcast*, 786 F. App'x 935, 939, 940 (11th Cir. 2019) (stating that "the law does not care whether the named defendants knew the citizenship and true names of the fictitiously named defendants," because the text of § 1441 "appears to direct courts to categorically disregard 'the citizenship of defendants sued under fictitious names,' regardless of how specifically those defendants are described")). This line of authority rejecting a court-created

12

added benefit of seeing that courts are split on the issue, which at the very least raises the prospect of some ambiguity.

Unlike the *Baker* court, this Court is unable to discern any fixed or clear meaning for the term "fictitious name," and, in particular, cannot say that the word "fictitious" unambiguously includes "anonymous" defendants in cases where the plaintiff knows the identities of those parties. A fictitious person generally would be a person who is invented, not real, or does not exist, while an anonymous person generally would be a person who is real and exists but whose identity is hidden from the public. *See Caywood I*, 856 F. Supp. 2d at 1003 ("[The removing defendant] mistakenly interprets 'fictitious' to be synonymous with 'anonymous.' Merriam Webster defines 'fictitious' as 'of, relating to, or characteristic of fiction: imaginary,' which is further defined as 'lacking factual reality.'"). While it is possible that the statutory term "fictitious name" was intended to encompass both invented and anonymous persons, it does not *unambiguously* do so. *See Goul*, 2021 WL 3772013, at *4 ("[W]hile the distinction between the fictitious defendant and anonymous defendant is undoubtedly nuanced, it is nonetheless significant.").

Given that § 1441(b)(1) is *not* unambiguous as applied to an anonymous but known defendant, courts have looked outside that language to resolve the question of whether those defendants fall under the fictitious name rule. In doing so, courts have found persuasive the commentary to the 1988 revisions that added the reference in § 1441 to fictitious parties. The commentary clarifies that "'the fictitious defendant in diversity citizenship cases' is a party 'whom the plaintiff knows to exist, or believes to exist, **but can't identify**." *Caywood I,* 856 F. Supp. 2d

---

exception to § 1441(b)(1) does not address the issue of whether § 1441(b)(1) applies in the first instance. Furthermore, case law holding that the statutory language is unambiguous in the context of an unknown John Doe defendant (i.e., one not known to the plaintiff) does not establish that the same language also is unambiguous as to the different situation of an anonymous defendant (i.e., one whose identity is known by the plaintiff but not disclosed in the complaint).

at 1003 (quoting 28 U.S.C. § 1441 (Commentary of 1988 and 1990 Revisions of Section 1441: The 1988 Amendment of Subdivision (a) (emphasis added by court)); *see also Johnson I,* 2014 WL 5323709, at *1 (same). The Anonymous Defendants are not individuals or entities whom Plaintiffs know to exist, or believe to exist but cannot identify. Rather, Plaintiffs *know* who those defendants are, and merely cannot refer to them by their real names in the complaint prior to the conclusion of the medical review panel proceedings. "Thus, the [Anonymous Defendants] [are] not [ ] unknown 'fictitious' part[ies] as contemplated when the language of § 1441 was amended, and Plaintiffs' use of the term 'Anonymous' in naming [the Anonymous Defendants] in this lawsuit does not support [Ethicon's] contention that the case should not be remanded." *Johnson I,* 2014 WL 5323709, at *1*; see also Miller*, 2012 WL 3236304, at *2 ("There is no principled basis for classifying as fictitious the healthcare defendants in this case …. A 'fictitious' defendant, for purposes of the removal statute, … is one whose identity is *unknown* and whose citizenship thus cannot be determined." (emphasis in original)); *Caywood I*, 856 F. Supp. 2d at 1003 ("[T]he Hospital does not lack a factual reality, as both th[e] Court and [removing defendant] are fully aware of the name and citizenship of the Hospital. In fact, the Hospital is represented by counsel, who has appeared and filed papers in this matter." (internal citation omitted)), *aff'd, Caywood II*, 2012 WL 3264572, at *2 ("'Fictitious' and 'anonymous' are distinct concepts, and the Hospital is the latter, not the former.").

This conclusion makes sense, moreover, when the purpose of the fictitious name rule is considered—"that it would be unfair to place the burden on the known defendants to determine the residency of any unknown defendants upon possible removal from state court when the plaintiff him or herself was not able to make that determination before filing the suit." *Johnson I*, 2014 WL 5323709, at *2. That purpose is not implicated by the anonymity requirement in the

MMA, which is meant "to protect the reputation of the accused medical professional until the medical review panel has the chance to review the allegations." *Id.* Here, Plaintiffs appear to use the term "anonymous" merely as a drafting tool to concisely refer to a party, who is likely more accurately described as something along the lines of "Known Defendant, identity withheld pursuant to the MMA." *See, e.g., Gilley*, slip op at 2 (noting that the anonymity requirement of the MMA is "no different" from the requirement in Federal Rule of Civil Procedure 5.2(a)(3) that a minor party be referred to only by initials, and concluding that "[i]t would be untenable to read [§ 1441(b)] as requiring t[he] Court to disregard the citizenship of a known defendant who is participating in the case and pretend that diversity of citizenship exists when everyone involved knows that it does not").

The primary case on which Ethicon relies to the contrary is *Thornburg,* 2006 WL 211952.[8] "[A]s noted by the court in *Johnson*, the *Thornburg* decision[ ], like many of the other cases cited by [Ethicon], 'predates the more recent and opposite trend[.]'" *Goul*, 2021 WL 3772013, at 4 (quoting *Johnson II*, 2015 WL 71035, at *6). Other than citing to the 2002 unpublished order in

---

[8] Ethicon also cites *Estate of Ronald Hoholek,* 2014 WL 7205586, and *Shepherd,* 2014 WL 1207516, but both those cases simply cite *Thornburg* without analyzing the issue in any depth. Moreover, the court in *Estate of Ronald Hoholek* made only an "initial assessment … that removal was proper," stating that its decision on that issue was "not a final determination of the matter." 2014 WL 7205586, at *2 & n.1. And the *Shepherd* court addressed the issue not on a contested motion to remand but as a preliminary matter to ruling on a motion for summary judgment filed by the anonymous healthcare providers following the state medical review panel's decision in their favor. 2014 WL 1207516, at *1. Thus, the court held it had subject matter over the case only by disregarding the anonymous healthcare providers' citizenship, and then proceeded to rule on a substantive matter in favor of those defendants. In any event, "[t]he *Shepherd* court use[d] the terms 'anonymous' and 'fictitious' synonymously and ma[de] no distinction between the two[.]" *Johnson II*, 2015 WL 71035, at *6.

the *Bush* case,[9] the *Thornburg* court relied on John Doe case law, 2006 WL 211952, at *1,[10] without recognizing the distinction between a Doe defendant whose identity the plaintiff does not know, and a defendant named anonymously pursuant to the MMA, whose identity the plaintiff does know but cannot disclose in the complaint.

The *Thornburg* court also cited to equitable concerns, stating that, "[t]o hold otherwise would place Defendants' right to removal in peril because the completion date of the medical panel process is uncertain and removal is constrained by a statute of limitations." 2006 WL 211952, at *2. Furthermore, the court said, "there is no guarantee that Plaintiff will ever seek to amend her complaint," because she could "settle her claims against the anonymous Defendants, face an adverse ruling from the panel that might preclude any amendment, or otherwise decide not to seek to amend her complaint." *Id.* But a defendant does not have an *unconditional* right to a federal forum; its right to remove to federal court exists only under the circumstances stated in the removal

---

[9] The *Bush* court, like the *Baker* and *Shepherd* courts, seems to have simply assumed that anonymous was synonymous with fictitious. *See Bush*, Dkt. #16, slip op. at 3 (quoting the "fictitious names" language in the statute and then stating without further discussion that, "[a]s a practical matter this means that the real or purported citizenship of actual persons sued in fictitious names is irrelevant to the removal analysis" and that "the reason why the parties are assigned fictitious names [is not] relevant").

[10] The John Doe cases cited in the *Thornburg* decision include: *Soliman v. Philip Morris Inc*., 311 F.3d 966, 971 (9th Cir. 2002) (where "the complaint list[ed] several 'Doe' defendants, whose 'capacities and relationship to other Defendants ... are unknown' but who [were], [the plaintiff] claim[ed], 'responsible for the acts complained of'"), *Howell*, 106 F.3d at 218 (where the complaint named an unidentified insurance company who the plaintiff's lawyer believed to be the other defendant's liability insurer, and the court stated in passing (since the case before it did not involve removal) that "naming a John Doe defendant will not defeat the named defendants' right to remove a diversity case if their citizenship is diverse from that of the plaintiffs"), *Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 737 (E.D. Wis. 2005) (another case involving unknown insurers named as "John Doe" defendants), and *Barragan v. Warner-Lambert Co.*, 216 F. Supp. 2d 627, 629 (W.D. Tex. 2002) (the "Jane Doe" and "John Doe" Unnamed Defendants" were identified as unknown pharmaceutical sales representatives who directly marketed and promoted the drug that allegedly harmed the plaintiff to the plaintiff's physician).

16

statute. Concerns about that right never materializing do not override jurisdictional constraints. *See Johnson I,* 2014 WL 5323709, at *3 (quoting *Mkt. St. Assocs. Ltd. P'ship v. Frey,* 941 F.2d 588, 590 (7th Cir. 1991)). Section 1441(b)(1) "is not meant to use the statutory mandates requiring anonymity, such as Indiana's Medical Malpractice Act, to ignore issues of federal subject matter jurisdiction. … [T]he mere possibility that Plaintiffs may not amend their complaint to identify the anonymous defendant by name [does not] satisf[y] the requirements of diversity subject matter jurisdiction." *Johnson II,* 2015 WL 71035, at *6-7. To ignore the citizenship of an anonymous (as opposed to fictitious) defendant when examining the district court's subject matter jurisdiction "would be nothing more than a bald fiction and would constitute a flagrant violation of this Court's duty to examine the basis for its jurisdiction and remand or dismiss those cases where such jurisdiction is found not to exist. That determination is squarely before this Court and cannot be ignored simply because some provision of Indiana law may authorize the [Anonymous Defendants] to be sued anonymously." *Caywood I,* 856 F. Supp. 2d at 1005, *aff'd*, *Caywood II,* 2012 WL 3264572, at *2 ("Common sense provides that when a court knows the citizenship of a given defendant, it should not turn a blind eye to an indisputable and obvious reality. Simply put, a contrary decision would elevate form over substance and needlessly risk wasting federal judicial resources.").

In analyzing the applicability of the "fictitious name" rule in § 1441(b)(1), the court in *Caywood I,* 856 F. Supp. 2d at 1003, drew a distinction between whether removal was proper in the first instance versus "the propriety of this Court maintaining this case in the known absence of subject matter jurisdiction." The court explained that it was "not questioning the propriety of [the removing defendant's] initial removal of this matter," because the court was "aware of no evidence that [the removing defendant] knew the identity of the Hospital at the time of removal." *Id.* at

1004. In light of the absence of such evidence, the court said that the removing defendant "was entirely correct to rely upon 28 U.S.C. § 1441(b)(1) in removing the case, because, from [the removing defendant's] perspective, the Hospital truly was a fictitious party." *Id.*

Nevertheless, it is no less of a "fiction" to remove the case based on allegedly "unknown" facts as it is to maintain jurisdiction over the case in the known absence of complete diversity. As previously discussed, the removing defendant bears the burden of showing the existence of diversity jurisdiction, and that burden includes plausibly alleging in the notice of removal that diversity jurisdiction exists. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 87 ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure"). If Ethicon did not know whether any of the Anonymous Defendants were Indiana citizens,[11] then, as the party with the burden of plausibly pleading federal court jurisdiction, it would seem to have a duty to seek that information out prior to removal.[12] Apparently, the *Caywood I* court would construe § 1441(b)(1) to apply to anonymous healthcare providers until such time as it can be shown that *the defendant knows* the identity of those co-defendants. Such a rule may conflict with the commentary to § 1441(b)(1), which states that

---

[11] *But see* [Notice of Removal, DE 1, ¶ 12 (acknowledging that the complaint alleges that "Anonymous Defendants A-F are businesses operating in Indiana with their respective principal places of business in Indiana")].

[12] For instance, the names of the Anonymous Defendants are included in the proposed complaint filed with the IDOI, *see* [DE 24-1, DE 24-8], and Plaintiffs have represented that all pleadings filed with the IDOI are available for public viewing on the IDOI's website. Moreover, Ethicon could have asked Plaintiffs for that information, or even sought the information directly from the Anonymous Defendants' attorneys, whose identities were ascertainable on the summonses issued by Plaintiffs and appearances filed in state court. Nothing in the MMA would appear to prevent Plaintiffs or the Anonymous Defendants themselves from articulating the citizenship of the Anonymous Defendants without a public disclosure of the identity of the Anonymous Defendants so as to allow Ethicon to assess whether removal was proper based on diversity jurisdiction. *See Johnson I*, 2014 WL 5323709, at *1-2; *see also Caywood I*, 856 F. Supp. 2d at 1004.

application of the fictitious defendant rule turns on what "*the plaintiff* knows to exist, or believes to exist," *Caywood I,* 856 F. Supp. 2d at 1003 (emphasis added), not on what the defendant knows or does not know, *see* note 7, *supra* (discussing case law addressing the issue of the defendant's knowledge).

Finding removal proper based on the removing defendant's purported lack of knowledge regarding the citizenship of an anonymous healthcare provider co-defendant results in the waste of federal resources in cases that seem foreordained to be remanded to state court. Nevertheless, the Court need not resolve the issue given that regardless of whether removal was initially proper here, a remand is required based on Plaintiffs' subsequent filing in this case of documents that identify the citizenship of the Anonymous Defendants. In doing so, however, the Court must acknowledge that a number of the cases previously cited in support of a remand, upon closer examination, do not necessarily support that result where the remand is based on a plaintiff's subsequent filing of identifying documents under seal. The cases in question were all decided by the same District Judge, whose original decision was issued without the benefit of more recent case law discussed in this report and recommendation. The rule applied by that District Judge could be read to preclude consideration of the citizenship of the anonymous healthcare provider pursuant to the fictitious name rule until such time as the anonymous healthcare provider *voluntarily* discloses its citizenship in a *public* court filing. *See Miller*, 2012 WL 3236304, at *2 (holding that § 1441(b)(1)'s fictitious name rule did *not* apply where the anonymous health care provider's identity "becomes known (and is indeed disclosed in public filings with the court)"); *Ossim I,* 2014 WL 2876760, at *1 (holding that § 1441(b)(1)'s fictitious name rule *did* apply where "the actual identities of the anonymous hospital and doctor are not known or before the Court, unlike in *Miller* where the anonymous hospital had participated in the action prior to remand"),

*reconsideration denied, Ossim II*, 2014 WL 4437501, at *1 (where the plaintiffs sought "to file documents, including admissions of [the removing defendant], identifying the anonymous defendants as Indiana citizens," court "declines" to allow them to do so, stating: "The Court acknowledges that the [plaintiffs] have let the 'cat out of the bag,' but they have ignored a crucial distinction of *Miller*. In that case, the healthcare defendants identified themselves and actively participated in the case by filing public documents. The current situation of plaintiffs filing identifying documents under seal is a compelling distinction in that the anonymous Defendants' have not identified themselves in public filings or otherwise."); *Goul*, 2021 WL 3772013, at *3 (remanding case where "at least two of th[e] anonymous defendants have appeared and conclusively asserted their Indiana citizenship as a 'judicial fact' (quoting *Johnson*, 2015 WL71035, at *7)).[13]

If the Court applied the rule in *Ossim II*, its order permitting Plaintiffs to file documents under seal identifying the Anonymous Defendants [DE 27] would appear to be erroneous. Yet the same District Judge affirmed the *Caywood I* decision, where a similar order granting a motion to seal was entered. *See Caywood v. Anonymous Hosp.,* No. 1:11-cv-1313-TWP-MJD, Order on Motion for Leave to File Documents Under Seal, Dkt. #39, slip op. (S.D. Ind. Mar. 29, 2012).[14] In

---

[13] The self-identifying publicly filed documents on which the district court relied in *Miller* and *Goul* were corporate disclosure statements, which the anonymous healthcare providers filed in federal court after the case was removed. *See Goul*, 2021 WL 3772013, at *4 (citing Filing Nos. 20 and 23); *Miller v. Anonymous Corp. A*, No. 1:12-cv-562-TWP-DML, Dkt. #11 (S.D. Ind. May 5, 2012).

[14] Unlike in this case, in *Caywood* the removing defendant opposed the motion to allow the documents to be filed under seal. The magistrate judge issued a written order overruling the arguments made by the opposing defendant. Among other things, the *Caywood* court noted that the plain language of the MMA states that the anonymity requirement only applies to "the complaint filed in court." *Caywood*, Dkt. #39, slip op. at 3 (quoting Ind. Code § 34-18-8-7(a)). Thus, the court found that the removing defendant's citation to *Beaty v. I-Flow Corp.,* No. 1:09-cv-383-WTL-TAB, 2009 WL 1689395 (S.D. Ind. June 16, 2009), was inapposite because in that case, the plaintiff sought to establish the lack of diversity jurisdiction by filing an amended

addition, the *Ossim* decision does not address the statutory meaning of the term "fictitious name," which according to the commentary turns on whether the plaintiff knows the identity of the anonymous defendants. The rule one can take from *Ossim* further has the effect of making federal court jurisdiction depend on the disclosure of facts rather than on the actual jurisdictional facts themselves.

Finally, as applied, a rule based on whether there has been a voluntary disclosure in a public filing leads to inconsistent results depending on how a court exercises its discretion to allow or require disclosures regarding pertinent jurisdictional facts. For instance, in this case, the documents were filed under seal without objection by any party. In *Caywood*, they were filed under seal over the objection of the removing defendant. In *Ossim*, leave to file identifying documents under seal was denied. And in *Johnson* and *Ropp*, identifying information was filed in response to a show cause order issued by the court. *See Johnson v. Globus Med., Inc.*, No. 1:14-cv-730-SEB-MJD, Dkt #13, slip op. (S.D. Ind. June 3, 2014); *Ropp II*, Dkt. #41, slip op. at 3.[15]

---

*complaint* under seal that identified the anonymous healthcare providers. *See id.* at *1 (citing *Hubbard v. Columbia Women's Hosp.,* 807 N.E.2d 45 (Ind. Ct. App. 2004) (where the plaintiff failed to comply with the MMA by filing a complaint that named the healthcare providers)); *see also Ropp III,* 2011 WL 304770, at *4 ("Unlike the plaintiff in *Hubbard*, … there is no allegation that [the plaintiff] failed to comply with the [MMA] [i.e., by filing a *complaint* with identifying information]. Therefore, *Hubbard* is inapplicable and does not support [the removing defendant's] assertion that the Court must dismiss [the plaintiff's] claims against [the in-state healthcare provider defendants] because they voluntarily waived their anonymity."). Since both *Hubbard* and *Beaty* involved the plaintiff seeking to file a complaint under seal that referred to the healthcare providers by name, neither case speaks to whether identifying the healthcare providers in sealed documents other than a complaint for purposes of assessing a federal court's removal jurisdiction is permissible. *See Caywood,* Dkt. #39, slip op. at 3 ("The documents in question are not a part of the complaint that was filed in this Court; rather, they are submitted as attachments to Plaintiff's Motion to Remand. As such, the MMA's anonymity provision does not expressly apply[.]").

[15] In *Richmann*, the plaintiff filed a motion requesting the court to issue of show cause order for the anonymous defendants to state their citizenship. *Richmann v. Genentech USA*, No. 2:16-cv-112-JVB-CAN, Dkt. #30 (N.D. Ind. Apr. 19, 2016). That motion was denied as part of the court's order remanding the case on the ground that the identities of the anonymous healthcare providers were known and their citizenship "*ascertainable.*" *Richmann*, Dkt. #46, slip op. at 5 (emphasis

Under the *Ossim* court's reasoning it was arguably improper for the *Johnson* and *Ropp* courts to have issued the show cause orders requiring the disclosure to determine whether the court had diversity jurisdiction over the case. Yet a court order to a party who has entered an appearance in the case to disclose its citizenship would seem to be necessary as part of the court's duty to ensure it has subject matter jurisdiction. *See Bazile v. Fin. Sys. of Green Bay, Inc.,* 983 F.3d 274, 281 (7th Cir. 2020) ("Federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. The collector's factual assertions here cast doubt on the court's adjudicatory authority. And that doubt triggers an obligation to conduct whatever supplementary factual proceedings are necessary to resolve [it]." (internal quotation marks and citations omitted)). An order requiring disclosure of jurisdictional facts also does not appear to be inconsistent with any requirement in the MMA. *See Johnson I*, 2014 WL 5323709, at *2 (holding that "the terms of the MMA do not prevent the plaintiff or any other party from identifying the residency of such a medical defendant, so long as the identification would not allow a third party to identify the defendant"); *Caywood I*, 856 F. Supp. 2d at 1004 (noting that the plaintiff can articulate the citizenship of a known, but anonymous defendant so as to allow the court to properly examine its subject matter jurisdiction without a public disclosure of the identity of the anonymous party).

In the end, the Court does not need to decide whether a rule requiring a voluntary disclosure in a publicly filed document is correct because *Ossim,* which is the only case denying remand on this basis, can be distinguished for a different reason. In *Ossim*, it appears the anonymous

---

added). The plaintiffs also filed identifying documents under seal (without leave of court), but the court's remand order did not cite to those documents in holding that the fictitious name rule did not apply to the anonymous healthcare providers.

healthcare providers had not entered an appearance before the court and in fact there is no indication that the plaintiff had ever served them with the state court complaint. Under those circumstances, there is no need to rely on the fictitious name rule in § 1441(b)(1) for disregarding the citizenship of those defendants in assessing federal court jurisdiction. The citizenship of those defendants likely could have been disregarded instead based on § 1441(b)(2), which provides that the court should consider only the citizenship of a party "properly joined *and served* as defendants." 28 U.S.C. § 1441(b)(2) (emphasis added).

Based on the above, the Court concludes that § 1441(b)(1)'s fictitious name rule does not apply to the Anonymous Defendants so as to allow the Court to disregard the citizenship of those defendants in determining whether there is diversity jurisdiction over this case (whether at the time of removal or afterwards when documents identifying the Anonymous Defendants were filed under seal affirmatively demonstrating that diversity jurisdiction does not exist in the case).[16]

---

[16] While the Court concludes that the fictitious name rule in § 1441(b)(1) does not apply to a defendant named anonymously pursuant to the MMA, the Court also raised a separate issue during a status conference in this case of whether Federal Rule of Civil Procedure 10(a) might have some application here related to the Anonymous Defendants' anonymous status. Rule 10(a) provides in part that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). "This rule, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Doe v. Cook Cnty., Ill.*, 542 F. Supp. 3d 779, 783 (N.D. Ill. 2021) (internal quotation marks and citation omitted); *see also In re Boeing 737 MAX Pilots Lit.*, No. 1:19-cv-5008, 2020 WL 247404, at *2 (N.D. Ill. Jan. 16, 2020) ("Time and again, the Seventh Circuit has frowned on the disfavored practice of bringing claims incognito."). The Court directed the parties' attention to the *Ropp* case, which raised the question of whether the anonymity requirement of Ind. Code § 34-18-8-7 was substantive and thus controlling law for a diversity case, or whether it instead was procedural in which case Rule 10(a) and not Ind. Code § 34-18-8-7 would apply. *See Ropp II*, Dkt. #41, slip op. at 5-6 (citing, *inter alia, Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 425, 427 (1996) (holding that, under the *Erie* doctrine, a federal court sitting in diversity must apply state substantive law and federal procedural law)); *see also Brauer*, 2014 WL 29069, at * 2 (same). Ultimately, the *Ropp* court did not need to reach the conflicts issue because the anonymous defendants in that case voluntarily waived their anonymity in response to the show cause order. *Ropp III*, 2011 WL 304770, at *1. In any event, upon reviewing the parties' supplemental filings discussing the *Erie* conflicts issue, the Court ultimately concludes that there is no conflict between Rule 10(a) and the MMA anonymity

## 2.   FRAUDULENT MISJOINDER

Ethicon's alternative argument is that the Court should sever and remand the medical malpractice claims against the Anonymous Defendants because those claims are fraudulently misjoined with Plaintiffs' product liability claims against Ethicon. The fraudulent *mis*joinder doctrine is a variation on the fraudulent joinder doctrine. The latter permits a court to disregard a nondiverse defendant in determining its diversity jurisdiction where the plaintiff has "no possibility" of "establish[ing] a cause of action against [the nondiverse defendant] in state court" or "no chance" of "succe[ss] against the [nondiverse defendants]." *Boruff v. Transervice, Inc.,* No. 2:10-CV-00322 JD, 2011 WL 1296675, at *3 (N.D. Ind. Mar. 30, 2011) (internal quotation marks and citation omitted)). Ethicon does not argue—nor could it—that Plaintiffs have "no possibility" of "establish[ing] a cause of action against [the Anonymous Defendants] in state court" or "no chance" of "succe[ss] against [those Defendants]." Instead, Ethicon cites the Eleventh Circuit's 1996 decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), where the court extended the fraudulent joinder doctrine to a situation involving an alleged procedural misjoinder. In that case, the claims of one set of plaintiffs against a group of nondiverse defendants, and the claims of a different set of plaintiffs against one diverse defendant, alleged a common business practice but were otherwise unrelated. *Id.* at 1360. The district court "held there was an 'improper and fraudulent joinder, bordering on a sham.'" *Id.* In affirming that decision on appeal,

---

rule that needs to be resolved. Anonymity, though generally disfavored in federal court, is allowed in certain circumstances. *See, e.g., Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (describing exceptions to federal policy against anonymity). Given that the Seventh Circuit has recognized "the substantive policy foundations and effects" of the MMA, *Thompson v. Cope*, 900 F.3d 414, 426 n.3, appropriate circumstances for allowing anonymity despite Rule 10(a) exist in this case, even if federal procedural law applied. *See, e.g., Caywood I*, 856 F. Supp. 2d at 1004 n. 2 (concluding that "there is no need to address any conflicts of laws question" related to Federal Rule 10(a) and the MMA anonymity requirement).

the Eleventh Circuit stated that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

**(a)   WHETHER THE FRAUDULENT MISJOINDER DOCTRINE IS A COGNIZABLE BASIS FOR REMOVAL**

This Court, in a decision by District Judge Philip P. Simon, previously addressed *Tapscott* and the fraudulent misjoinder doctrine in *Higginbotham v. State Farm Mutual Automobile Insurance Co.,* No. 2:05-cv-112-PPS-PRC, Dkt. #12, slip op. (N.D. Ind. Dec. 7, 2005). The *Higginbotham* court did not decide whether to adopt the doctrine, finding instead that the joinder in that case was proper in any event. But the court noted that "[t]he Seventh Circuit has never endorsed or even addressed *Tapscott* or the fraudulent misjoinder doctrine it created," and that *Tapscott* had been criticized by a number of district courts. *Id.* at 5. Fifteen years later, the Seventh Circuit still has not addressed the fraudulent misjoinder doctrine, while a growing number of courts have rejected it, including the Fifth Circuit in the recent decision of *Williams v. Homeland Insurance Co. of New York,* 18 F.4th 806, 814-17 (5th Cir. 2021).[17]

In *Williams*, the Fifth Circuit declined "to extend improper joinder doctrine to procedural questions like party joinder." *Id.* at 816. The court described "[t]he response to *Tapscott* and its underlying reasoning" as "unfavorable," noting that "[n]o other circuit court has yet adopted the approach from that case, and it has received, at best, mixed reviews from district courts." *Id.* The

---

[17] Ethicon argues that the Fifth Circuit has "considered the fraudulent misjoinder doctrine favorably," citing two earlier decisions—*Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006), and *In re Benjamin Moore & Co.*, 318 F.3d 626, 630 (5th Cir. 2002). *See* [DE 36 at 4-5]. The Fifth Circuit's recent and controlling decision in *Williams*, however, discussed those prior decisions and explicitly disavowed that either case can or should be read as having adopted or endorsed the fraudulent misjoinder doctrine. *See Williams*, 18 F.4th at 815 n.12.

court also observed that "§ 1441(b)(2) does not provide a textual basis for expanding federal jurisdiction to include fraudulent misjoinder, nor is there any other statutory authority (or case law interpreting statutory authority in this context) that does so." *Id.* at 815. Moreover, the court found, the doctrine of fraudulent misjoinder "upends [the] rules on removal" pursuant to which the court "look[s] at jurisdiction *at the time of removal*, not after a federal court severance." *Id.* at 816 (emphasis added). According to the court, "[a]pplying fraudulent misjoinder turns [this well established rule] around by effectively allowing a federal district court to engage in significant procedural wrangling in order to *create* jurisdiction." *Id.* (emphasis in original). "Adopting the fraudulent misjoinder doctrine," the court said, "will dramatically expand federal jurisdiction, putting the federal district courts … in the position of resolving procedural matters that are more appropriately resolved in state court—all without a clear statutory hook." *Id.* (citing *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 621–22 (8th Cir. 2010) (summarizing courts' criticism of *Tapscott* as creating an "unpredictable and complex jurisdictional rule" that contravenes the principle that federal jurisdiction be "narrowly construed")). The court reasoned that "[s]tate courts … are certainly able to address these issues, and respecting state court resolution of state law issues is a bedrock principle of our federal system. … Accordingly, [courts should] … not usurp a state court's ability to decide whether parties have been misjoined under a state court's own procedural rules." *Id.* at 816-17 (citations omitted).[18]

Since *Williams*, a number of district courts have followed suit and rejected the fraudulent misjoinder doctrine. *See, e.g., S. Insulation, Inc. through Protopapas v. OneBeacon Ins. Grp., Ltd.*,

---

[18] Three other circuit courts of appeal have been presented with the issue but declined to decide whether to adopt or reject the fraudulent misjoinder doctrine. *See Graham v. Mentor Worldwide LLC*, 998 F.3d 800, 803 n.3 (8th Cir. 2021); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729 (9th Cir. 2001) (unpublished).

No. 3:22-01308-MGL, 2022 WL 16798468, at *2 (D.S.C. Nov. 8, 2022) ("The Court determines the reasoning of *Williams* is more consistent with Fourth Circuit jurisprudence and thus refrains from adopting the fraudulent misjoinder doctrine."); *Sztroin v. Dituri,* No. C22-5608 BHS, 2022 WL 7053149, at *3 (W.D. Wash. Oct. 12, 2022) ("Considering the great weight of authority both criticizing and declining to adopt the fraudulent misjoinder doctrine, this Court also declines to adopt it."); *Bank of Am., N.A. v. Fid. Nat'l Title Grp., Inc.,* No. 2:21-CV-0399-JAD-NJK, 2022 WL 2914847, at *6 (D. Nev. July 25, 2022) ("I find the *Williams* reasoning persuasive, adopt it here, and decline the invitation to create subject-matter jurisdiction by severing claims."); *see also In re Paraquat Prods. Liab. Litig*., No. 3:21-MD-3004-NJR, 2022 WL 16758468, at *5 (S.D. Ill. Nov. 8, 2022) ("[D]istrict courts in the Seventh Circuit consistently reject the theory of fraudulent misjoinder. … Until instructed otherwise by the U.S. Supreme Court or the Seventh Circuit, this Court again declines to recognize the doctrine of fraudulent misjoinder.").

Not only these very recent cases, but a significant number of district court decisions prior to *Williams*, but after the *Higginbotham* decision, also have refused to recognize the doctrine.[19]

---

[19] *See, e.g., Proulx v. Mintzer*, Civil Action No. 19-12506-FDS, 2020 WL 3105034, at *7 (D. Mass. 2020) (declining to resolve the issue but noting that the First Circuit has not recognized the fraudulent misjoinder doctrine and that two district courts within the circuit had "rejected the doctrine outright," each finding "its adoption inappropriate in light of the unsettled legal landscape and the rule of strict construction regarding removal statutes"); *Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 687, 697 (W.D. Ky. 2019) (noting that the Sixth Circuit had not adopted the doctrine and "likewise declin[ing] to apply it in this case"); *Livingston v. Hoffmann-La Roche, Inc.,* No. 09 C 2611, 2009 WL 2448804, at *8 (N.D. Ill. Aug. 6, 2009) ("this doctrine has been highly criticized and rejected by other courts in the Northern District of Illinois and by courts in other districts of the Seventh Circuit," citing cases and declining to adopt the doctrine "[f]or the reasons set forth by these courts"); *Geffen v. Gen. Elec. Co.,* 575 F. Supp. 2d 865, 870 (N.D. Ohio 2008) (finding the reasons for rejecting the doctrine articulated in a number of other district court cases persuasive and, in the absence of controlling Sixth Circuit authority, declining "to wade into a thorny thicket of unsettled law" regarding how to apply the doctrine (citing, *inter alia, Osborn v. Metro. Life Ins. Co*., 341 F. Supp. 2d 1123, 1127–29 (E.D. Cal. 2004), which "serves as the foundation for many of the subsequent cases [in California] declining to follow *Tapscott*")); *see also* [Plaintiffs' Response and Objection to Ethicon's Motion to Sever [DE 28] at 7 (citing additional cases)].

One case decided shortly after *Higginbotham* by a district court from within this circuit "explicitly declined to follow *Tapscott* after providing several pages of astute, insightful analysis." *Geffen*, 575 F. Supp. 2d at 870. Just as the Fifth Circuit would hold years later, the district court in *Rutherford v. Merk & Co*., 428 F. Supp. 2d 842 (S.D. Ill. 2006), concluded that "whether viable state-law claims have been misjoined—even 'egregiously' misjoined—is a matter to be resolved by a state court," and that "the *Tapscott* doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts." *Id.* at 851, 852. Following *Rutherford*, cases from the Southern District of Illinois have adopted that court's analysis and "consistently reject application of the doctrine of fraudulent or procedural misjoinder." *See Feeley v. Bayer Corp.,* No. 18-CV-2090-NJR-GCS, 2019 WL 4261545, at *4 (S.D. Ill. Sept. 9, 2019) (collecting cases).

As to federal district courts in Indiana, the post-*Higginbotham* decision in *Fore Investments, LLC v. Travelers Indemnity Co. of America*, No. 1:12-CV-01702-SEB-DML, 2013 WL 3467328 (S.D. Ind. July 9, 2013), also declined to follow *Tapscott.* The court in that case, like the *Rutherford* court, provided a thorough discussion of its reasons for rejecting the fraudulent misjoinder doctrine. The court found that the doctrine was too imprecise to serve as a jurisdictional rule, and that the amendments to the removal statute indicate that the doctrine of fraudulent misjoinder is inconsistent with Congressional intent. *Id.* at *5-9. Like numerous courts before and after it, the *Fore Investments* court concluded "that misjoinder is better decided in the first instance by the state court, applying its own state procedural rules rather than by a federal court attempting to determine whether a state court, in its discretion, might view the plaintiff's joinder of claims against multiple defendants as permissible (no misjoinder), improper but barely so ('mere' misjoinder), or in egregious disregard of the state's joinder rules." *Id.* at *7.

Although Ethicon cites *Higginbotham*, Judge Simon did not adopt or approve of the fraudulent misjoinder doctrine in that case. Instead, *Higginbotham* is like three earlier Indiana district court cases—*Lyons v. Lutheran Hospital of Indiana*, 2004 WL 2272203 at *4–5 (S.D. Ind. Sept.15, 2004), *In re Bridgestone/Firestone, Inc.*, 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003), and *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999). "First, in none of those cases was recognition of the doctrine necessary to the court's decision," because "no fraudulent misjoinder—whatever its contours might be—was found, and the case[s] w[ere] therefore remanded to state court." *Fore Invests.*, 2013 WL 3467328, at *5. "Moreover, these opinions should not be read as endorsements of the doctrine, and they in fact identify some of the difficulties in applying the theory," such as the federal district court's "need to apply the state's procedural joinder rule rather than Fed. R. Civ. P. 20," and "the difficulty of applying *Tapscott* because the standard is difficult to define. *Id.* (citing *Conk*, 77 F. Supp. 2d at 970–71 & n. 5 (citing 14B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 3723 at 657 (3d ed.1998)) (observing *Tapscott's* "cryptic" explanation of "egregious" misjoinder), and *Bridgestone/Firestone*, 260 F. Supp. 2d at 728 ("what the 'something more' is was not clearly established in *Tapscott* and has not been established since")); *see also Higginbotham*, Dkt. #12, slip op. at 5-6. Thus, neither *Higginbotham* nor any other Indiana district court case cited by Ethicon "compel[s] the conclusion that fraudulent misjoinder ought to be adopted as a basis for permitting removal in the absence of complete diversity." *Fore Invs.*, 2013 WL 3467328, at *5.

In response to Plaintiffs' argument that the Court should not adopt the fraudulent misjoinder doctrine, Ethicon's cites several district court cases from outside this circuit to show that "federal courts frequently apply the doctrine[.]" [DE 36 at 2 (initial cap omitted)]. But the three cases Ethicon cites—*Smith v. Hendricks*, 140 F. Supp. 3d 66, 73-76 (D.D.C. 2015), *In re*

*Stryker Rejuvenate & ABG II Hip Implant Products Liability Litigation*, MDL No. 13-2441 (DWF/FLN), 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013), and *In re Rezulin Products Liability Litigation*, No. MDL 1348, 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003)—apply the doctrine without analysis. That is, none of the cases cited by Ethicon even cite *Tapscott* let alone discuss the rationale of that court's decision, nor do they attempt to rebut the arguments made in the cases that have rejected the fraudulent misjoinder doctrine as an inappropriate extension of federal court diversity jurisdiction. The additional cases Ethicon cites in support of its argument that the medical malpractice and product liability claims are misjoined similarly do not grapple with the issues raised by the courts that have rejected the doctrine.

Finally, Ethicon cites two decisions of the United States Supreme Court—*Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014), and *Lincoln Property Co. v. Roche,* 546 U.S. 81 (2005). But neither case is on point. *Mississippi ex rel. Hood* merely recognizes the fraudulent joinder doctrine and the more general principle on which that doctrine is based, i.e., that courts should ensure that diversity jurisdiction is not defeated by the naming of a defendant who is not a "real part[y] in interest to a suit." 571 U.S. at 174. Similarly, *Lincoln Property Co.* observes that Supreme Court "decisions employ[ ] 'real party to the controversy' terminology in describing or explaining who counts and who can be discounted for diversity purposes[.]" 546 U.S. at 91. Cases applying a real-party-in-interest analysis in determining federal diversity jurisdiction "bear scant resemblance to" an action like the present one involving claims against healthcare providers who obviously have "a vital interest [and role] in this case." *Id.* at 91, 92-93.[20] As the Supreme

---

[20] Ethicon asserts in the notice of removal that, until a decision is rendered by the medical review panel, "Plaintiffs have no viable cause of action against the Anonymous Defendants." [DE 1 ¶ 4]. But Ethicon does not explain what it means by "viable" nor does it provide any citation to support that assertion. As previously discussed, the MMA permits Plaintiffs to file suit against the Anonymous Defendants while the medical review proceedings are pending.

Court explained, "[a] named defendant who admits involvement in the controversy and would be liable to pay a resulting judgment is not 'nominal' in any sense except that it is named in the complaint." *Id.* at 93; *see also Rutherford*, 428 F. Supp. 2d at 851 ("Nothing in the jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims is a question that implicates the subject matter jurisdiction of a federal court.").

The undersigned concludes that the weight of authority, as well as the better reasoned decisions, criticize and decline to adopt the fraudulent misjoinder doctrine. The undersigned agrees with the conclusion reached by those courts that whether claims have been misjoined should be determined by a state court applying its own procedural rules. "[I]f there is a possibility of recovery against both defendants but one defendant believes the case should be severed, there is nothing to prevent seeking that severance in state court. If it is granted, then the removal would be straightforward; if not, then clearly not appropriate." *Williams*, 18 F.4th at 815; *see also Higginbotham*, Dkt. #12, slip op. at 6 ("[A] better procedure would be to have the diverse defendant seek severance of the non-diverse defendant in state court. If successful, the diverse defendant could then remove its case to federal court provided it did so within a year from the date the suit was commenced.").[21]

Accordingly, for the reasons discussed above, the undersigned recommends that the presiding District Judge decline to adopt the fraudulent misjoinder doctrine as a basis for a federal

---

[21] Although Ethicon does not make the same argument here, the defendant in *Williams* suggested that a rule requiring defendants to seek a severance in state court first, and only then remove, presents its own problems. 18 F.4th at 817 n.14. The *Williams* defendants argued that seeking a severance in state court "would force them to 'risk missing the 30-day removal deadline under Section 1446.'" *Id.* The Fifth Circuit rejected that argument, pointing out that the 30-day removal deadline does not start running until *after* the state court concludes the claims are misjoined and severs all non-diverse parties. *Id.*

court in assessing its jurisdiction upon removal to disregard legally cognizable claims against a nondiverse defendant brought in the same lawsuit.

> **(b)** **IF THE COURT WERE TO ADOPT THE FRAUDULENT MISJOINDER DOCTRINE, WHETHER IT WOULD APPLY IN THIS CASE**

If the Court determines that fraudulent misjoinder is not a viable removal principle, it need not determine whether the claims at issue here are misjoined, fraudulently or otherwise, as that is a decision for the state court, assuming Ethicon asks the state court to sever the claims on the basis of misjoinder. Nevertheless, the Court will address Ethicon's misjoinder argument in the event that, contrary to the undersigned's recommendation, the presiding District Judge either adopts the fraudulent misjoinder doctrine or declines to rule on that issue.

Ethicon argues that Plaintiffs' claims are misjoined because the product liability claims arise out of a transaction different from the medical malpractice and related claims. Specifically, according to Ethicon, Plaintiffs' product liability claims relate to Ethicon's alleged failure "'to use reasonable care in designing Surgicel, warning physicians and the Plaintiff about the product's danger when the Defendants knew or should have known or should have discovered the danger, not instructing physicians about the proper use of Surgicel, and otherwise putting Surgicel into the stream of commerce when it was in a defective condition unreasonably dangerous to consumers including the Plaintiff.'" [DE 1 ¶ 28 (quoting Compl. ¶ 54)]. Plaintiffs' medical malpractice and related claims against the Anonymous Defendants, on the other hand, according to Ethicon, "are based on their alleged deviations from the standard of care in performing the March 6, 2020 surgery, negligent medical treatment related to the same, and purported breach of contract relating to certain medical bills and expense." [*Id.* (citing Compl. ¶¶ 1-42)]. Ethicon further argues that "[t]he essential elements of the medical malpractice and related claims against the Anonymous Defendants and the product liability claims against Ethicon are not the same," and that "the crucial

aspects of the claims, including the evidence required to prove each claim, are both legally and factually distinct[.]" [*Id.* ¶ 29; *see also* DE 5 at 5-6; DE 36 at 7].

As an initial matter, Judge Simon stated in *Higginbotham*, Dkt. #12, slip op. at 6, that, if he were to adopt the fraudulent misjoinder doctrine, he would require a showing of "egregiousness" as stated by the Eleventh Circuit in *Tapscott*. Ethicon asserts that this Court should instead follow the approach of those district courts that have applied the fraudulent misjoinder doctrine without requiring a showing of egregiousness, notwithstanding that the *Tapscott* court held that a mere misjoinder was insufficient. While Ethicon cites cases that discard the egregiousness requirement, it does not explain why Judge Simon was wrong when he rejected that approach in *Higginbothom*. "This Court will not develop [Ethicon's] jurisdictional arguments for [it]." *Ash v. Providence Hosp.,* Civil Action No. 08-0525-WS-M, 2009 WL 424586, at *9 (S.D. Ala. Feb. 17, 2009) (citing *Ramey v. Gilbert*, No. 5:05-cv-244 (CAR), 2005 WL 3149381, *3 (M.D. Ga. Nov.23, 2005) (rejecting removing defendant's fraudulent misjoinder argument where defendant failed even to contend that the alleged misjoinder was egregious, but instead argued mere misjoinder)). In addition, the Court "perceives no basis on these facts for holding that [the medical malpractice and related claims] were all so 'egregiously misjoined' so as to eliminate [the Anonymous Defendants'] non-diverse citizenship from the jurisdictional equation." *Id.* Accordingly, no further examination of Ethicon's misjoinder arguments should be necessary. *Id.*

In any event, even if the Court were to consider Ethicon's arguments of a "garden-variety misjoinder," *id.*, the Court is not persuaded by them, for the reasons discussed below.

### (i)    *Indiana Joinder Law*

In *Higginbotham*, Judge Simon said that, "[t]o the extent this Circuit embraces the fraudulent <u>mis</u>joinder doctrine, [he] agree[s] with *Conk* and *Jamison* that the state joinder rule

should govern whether joinder is appropriate in a removed case." *Higginbotham*, Dkt. #12, slip op. at 7 n.1 (discussing *Conk*, 77 F. Supp. 2d at 971, and *Jamison v. Purdue Pharma Co.,* 251 F. Supp. 2d 1315, 1321 (S.D. Miss. 2003)); *see also Lyons,* 2004 WL 2272203, at *5 ("Whether the claims against the two defendants were misjoined should be evaluated under state procedural law rather than federal law.").[22] The appropriate standard for a federal court to apply in evaluating joinder under the state procedural rule is whether there is "a *reasonable possibility* that a state court would find [plaintiff's] claims against [one defendant] were properly joined with his claims against the other defendant[.]". *Higginbotham*, Dkt. #12, slip op. at 8 (internal quotation marks and citation omitted, emphasis added by court).

Indiana Trial Rule 20, Permissive Joinder of Parties, provides in relevant part as follows:

> All persons may be joined in one [1] action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Ind. T.R. 20(A)(2). There are three requirements for joinder under this rule:

> First, a right of relief must be asserted against the defendants jointly, severally, or in the alternative. … Second, and most importantly, the claims must have arisen out of the same transaction, occurrence, or serious of transactions or occurrences. In this regard, [the court] appl[ies] the logical relationship test (also applied in the context of compulsory counterclaims under Trial Rule 12(A)): all logically related events entitling a person to institute a legal action against another generally are regarded as compromising a transaction or occurrence. … [T]hird[,] … there [must be] at least one common question of law or fact among the parties.

---

[22] Judge Simon also noted, however, that, "as in *Conk*, applying the Indiana joinder rule will have little practical effect because it virtually mirrors its federal counterpart." *Higginbotham*, Dkt. #12, slip op. at 7 n.1.

*ABC Radiology, P.C. v. Gearhart,* 69 N.E.3d 545, 549 (Ind. App. 2017) (citations omitted). In evaluating whether these three requisites have been met, the Court keeps in mind that "[t]he purpose of T.R. 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits," and that, "[t]o accomplish these goals, Indiana courts give T.R. 20(A) the broadest possible reading." *Id.*

Ethicon does not discuss the first requirement under Indiana Trial Rule 20(A) that the claims must involve joint, several, or alternative liability. *See* [DE 5 at 4, 5-6]. However, a primary feature of the *Tapscott* fraudulent misjoinder rationale was the fact that the plaintiffs in that case did not allege joint, several, or alternative liability against the diverse and nondiverse defendants. *See Tapscott*, 77 F.3d at 1360 ("The district court correctly found no allegation of joint liability or any allegation of conspiracy."); *see also Triggs v. John Crump Toyota, Inc*. 154 F.3d 1284, 1287 (11th Cir. 1998) (fraudulent misjoinder under the rule stated in *Tapscott* occurs "where a diverse defendant is joined with a nondiverse defendant *as to whom there is no joint, several or alternative liability* and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant" (emphasis added)).[23] Thus, if the Court were to apply *Tapscott*, as opposed to the fraudulent misjoinder doctrine as it has evolved from that case, it would have to conclude that the holding of *Tapscott* does not apply because, unlike in that case, the alleged facts here give rise to joint and several liability.[24]

---

[23] One could argue that the elusive "egregious" factor was intended to, and should be, limited to the facts of *Tapscott*, as later made clear in *Triggs*, i.e., (1) no joint, several or alternative liability, and (2) no real connection between the claims against the diverse defendant and the claims against the nondiverse defendant.

[24] The liability of the Anonymous Defendants and Ethicon alleged in the complaint is joint and several because the complaint seeks to recover from those defendants for the same injury—Plaintiff's injuries arising out of his surgery. *See Ind. Dep't of Ins. v. Everhart*, 960 N.E.2d 129, 137 (Ind. 2012) ("Two or more co-defendants constitute joint tortfeasors if their independent negligent conduct proximately caused some indivisible harm."); *Hill v. Rhinehart*, 45 N.E.3d 427,

Ethicon does not and cannot dispute that the facts alleged in the complaint give rise to joint and several liability against Ethicon and the Anonymous Defendants.[25] Instead, Ethicon repeatedly cites to the fact that Plaintiffs' claims against it are alleged in separate counts from their claims against the Anonymous Defendants. *See* [DE 5 at 6 ("Plaintiffs alleged seven substantive causes of action and ***none*** of those claims are asserted against both the Anonymous Defendants and Ethicon" (emphasis and bold in original)].[26] The organization of the counts in the complaint is due to the differing legal theories under which Plaintiffs seek to recover from Ethicon and the Anonymous Defendants. As Ethicon points out, the product liability claims are based on a theory of failure to warn, failure to properly instruct, and strict liability for a defective product, whereas the claims against the Anonymous Defendants are medical malpractice claims based on those

---

438 (Ind. App. 2015) ("At common law, joint tortfeasors are two or more persons jointly or severally liable in tort for the same injury to person or property. Their actions unite to cause a single injury.") (citations omitted); *see also Todd by Todd v. Merrell Dow Pharms., Inc.*, 942 F.2d 1173, 1176 (7th Cir. 1991) (stating that pharmaceutical company and healthcare provider were joint tortfeasors in suit to recover for injuries allegedly sustained as a result of ingesting drug prescribed by healthcare provider).

[25] The claims against the Anonymous Defendants that give rise to joint liability are the medical malpractice claims. Ethicon also mentions Plaintiffs' related claims against the Anonymous Defendants, which allege intentional and/or negligent infliction of emotional distress and breach of contract arising out of a post-surgery promise to pay for certain expenses Plaintiff incurred as a result of his injuries from the surgery. Those claims, however, are not the basis for finding joinder proper in this case. Ethicon does not cite any authority for the proposition that *all* claims against the Anonymous Defendants must meet the requirements for joinder with the product liability claims, and the Court is not aware of any. In fact, Indiana Trial Rule 20(A) expressly states that a "defendant need not be interested in … defending against all the relief demanded. Judgment may be given … against one or more defendants according to their respective liabilities." Ind. T.R. 20(A).

[26] Ethicon acknowledges that "Plaintiffs do allege a supposed cause of action for 'Loss of Consortium' against all defendants," but then argues loss of consortium is "not a substantive claim alleged against both Ethicon and the Anonymous Defendants" because "under Indiana law, [it] is a *derivative* claim." [DE 5 at 6 n.3 (emphasis in original)]. But a derivative claim is still a "substantive" claim.

healthcare providers' alleged deviation from the standard of care in performing the surgery. *See* [DE 5 at 5]. This is "true as far as it goes." *Lyons,* 2004 WL 2272203, at *5. But it has nothing to do with whether the complaint seeks to hold Ethicon and the Anonymous Defendants liable for a single injury. And, "[i]n evaluating misjoinder and severance," an allegation of joint liability for the same injury is the more "critical fact." *Id.*

The point is illustrated by the *Lyons* case. There the plaintiff alleged that a medical device surgically implanted in his wife was defective, causing his wife to return to the hospital a few days after the device had been implanted, at which time his wife slipped, fell, and hit her head, resulting in her death. *Id.* at 1. The manufacturer of the medical device argued, similar to Ethicon here, that "the alleged wrongs—distributing a defective product and the negligence claim against the hospital—occurred at different times and are subject to substantially different legal standards." *Id.* at *5. In rejecting that argument, the court pointed out that the plaintiff was alleging that his wife's death was caused by both the defendant manufacturer and the hospital. *Id.* Further, the court said, "[i]n a series of separate trials, each defendant could try to defend itself by blaming the absent parties." *Id.* In the court's view, having all possible defendants in one action where joint liability is alleged "will usually be both more just and more economical than a series of trials against different defendants." *Id.*; *see also Tinsley v. Streich,* 143 F. Supp. 3d 450, 461 (W.D. Va. 2015) ("Most importantly, the court finds that if plaintiffs had not joined both the Removing Defendants and the Virginia Healthcare Defendants in this action, then each set of defendants could utilize the 'empty chair' defense, and conveniently blame Kaylee's injuries on the missing defendants at trial."); *Wagner*, 2012 WL 1564133, at *3 ("[D]isposing of this action in the absence of the Hospital would both impair the Hospital's ability to protect its interest, as well as possibly subject [the product liability defendant] to inconsistent obligations because of the possibility that the

Hospital's actions contributed to [the plaintiff's] injuries."); *Ropp III*, 2011 WL 304770, at *5 (holding that joinder of claims against product liability defendant with claims against medical provider defendants was proper to avoid "inconsistent rulings"); *Wyatt v. Charleston Area Med. Ctr., Inc.* 651 F. Supp. 2d 492, 498 (S.D.W. Va. 2009) ("[T]he defendants will almost certainly debate which defendant is most responsible for the injuries."); *Conk*, 77 F. Supp. 2d at 972 ("By pointing to one another's conduct in separate trials, the defendants might be able to win inconsistent verdicts leaving [the plaintiff] without a remedy.").[27]

As previously noted, the very reason Plaintiffs added product liability claims to their malpractice claims is that at least one of the Anonymous Defendants, in defending the malpractice claims before the medical review panel, has pointed the finger at Ethicon's product as the cause of Plaintiff's surgical injury. Conversely, although Ethicon avoids specifically naming the Anonymous Defendants, its answer to the complaint alleges at least six affirmative defenses that include the allegation that Plaintiff's injuries were caused by a third-party. *See* [DE 34 (Second,

---

[27] Ethicon cites *Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990 (S.D. Fla. June 25, 2009), where the plaintiff brought medical malpractice claims in the same lawsuit as a product liability claim against a manufacturer of a hip replacement system, and the court found that the joinder of those claims in the same action was improper. The difference between that case and both *Lyons* and the present situation, however, is that the alleged negligence of the plaintiff's healthcare providers in *Stone* occurred one year after the plaintiff's hip replacement surgery. *Id.* at *1. More to the point, the plaintiff "contend[ed] that ... [the doctor's] alleged malpractice in failing to make a timely accurate diagnosis of the source of [the plaintiff's] persistent pain [was] [a] separate and distinct injury from the damage caused by the implant failure itself, and that the conduct of the product manufacturer and subsequent treating pain management physician did not combine to cause a single injury." *Id.* at *4. The court thus agreed with the product liability defendant that there was  misjoinder, finding that the health care providers and product liability defendant "were successive, rather than joint tortfeasors." *Id.* Indeed, in arguing there was a misjoinder, the manufacturer of the hip replacement system expressly "distinguishe[d] cases where a malpractice claim against a surgeon implanting [or explanting] a medical device is joined with a product liability claim against the manufacturer of that device" because in those cases, "the tortfeasors' conduct combin[ed] to cause a single injury, thus meeting the conventional definition of 'joint and several' liability.'" *Id.* at *3. In other words, the manufacturer in *Stone* conceded that joinder would be proper in a medical device case exactly like this one.

Eighth, Ninth, Fourteenth, Twenty-Fourth, and Thirtieth "Separate Defenses")]; *see also Wagner*, 2012 WL 1564133, at *3 (noting that the product liability defendant raised several affirmative defenses implicating the hospital's misuse of the product liability defendant's medical device as the cause of the plaintiff's injuries).

Plaintiffs point out that several provisions in Indiana's Comparative Negligence Act specifically address this situation. That statute provides that a qualified health care provider against whom a medical malpractice claim is filed with the IDOI pursuant to the requirements of the MMA may assert a nonparty defense to the malpractice claim. *See* Ind. Code § 34-51-2-17. If the qualified health care provider asserts a nonparty defense, the Comparative Negligence Act provides that the medical malpractice claimant must be given a reasonable opportunity to assert a claim against the nonparty before the expiration of the period of limitation applicable to the claim. *See* Ind. Code § 34-51-2-17(2). Further, the Comparative Negligence Act specifically recognizes that an action may be brought by the medical malpractice claimant to recover against both the qualified health care provider and one or more defendants who are not qualified health care providers. Ind. Code § 34-51-2-18(a). The statute further provides that, when such a combined action is brought, "the trial court shall grant reasonable delays in the action brought against those defendants who are not qualified health care providers until the medical review panel procedure can be completed as to the qualified health care providers." Ind. Code § 34-51-2-18(b). And, most significantly, the statute provides that, "[w]hen an action is permitted to be filed against the qualified health care providers, the trial court *shall permit* a joinder of the qualified health care providers as additional defendants in the action on file against the nonhealth care provider." Ind. Code § 34-51-2-18(c) (emphasis added).

The statutory language is mandatory ('shall permit"), thus requiring the trial court to permit the claimant to join his claims against the qualified health care provider with his claims against "one or more defendants who are not qualified health care providers." Ethicon admits that Ind. Code § 34-51-2-18 authorizes the joinder of *some* medical malpractice claims with a claim against a non-healthcare provider, but argues that not every claim against a non-healthcare provider can be joined. Specifically, Ethicon argues that a claim against a non-healthcare provider that does not otherwise satisfy the requirements for joinder under Indiana Trial Rule 20(A) cannot be joined pursuant to Ind. Code § 34-51-2-18. To illustrate its point, Ethicon gives a hypothetical of a medical malpractice claim that could not be joined with a product liability claim because the claims arose out of completely separate, unrelated transactions. *See* [DE 36 at 6]. Ethicon asserts that, under Plaintiffs' interpretation of Ind. Code § 34-51-2-18(c), the unrelated claims in the hypothetical could be joined simply because one claim was against a qualified healthcare provider, even though such joinder would obviously violate Indiana Trial Rule 20(A).

But that is not Plaintiffs' argument. The Indiana Comparative Negligence Act provides for the joinder of claims against a qualified healthcare provider and a non-healthcare provider only in specific circumstances, i.e., where the qualified healthcare provider *asserts a nonparty defense*. *See* Ind. Code § 34-51-2-17, § 34-51-2-18. A nonparty defense is a defined statutory term; it means a defense "that the damages of the claimant were caused in full or in part by a nonparty." Ind. Code § 34-51-2-14. In other words, the unrelated claims in Ethicon's hypothetical could *not* be joined under Plaintiffs' interpretation of Ind. Code § 34-51-2-18, because the hypothetical did not involve a nonparty defense to the malpractice claim, that is, an allegation by the qualified healthcare provider defendants that the claimant's injuries were caused in full or in part by the non-healthcare provider defendant. Here, however, that is exactly what one of the Anonymous Defendants has

asserted. And, as Plaintiffs correctly point out, Ind. Code § 34-51-2-18 gives Plaintiff the right to join his claims against the non-healthcare provider who the healthcare provider alleges caused Plaintiff's injuries with his claims against the healthcare provider defendants in a single lawsuit to recover for those injuries.

The point is not, as Ethicon suggests, that Plaintiff is arguing Ind. Code § 34-51-2-18 overrides Indiana Trial Rule 20(A), but that, implicit in Ind. Code § 34-51-2-18 is the recognition that a nonparty defense to a claim under the MMA satisfies the requirements of Indiana Trial Rule 20(A), and, even beyond that recognition, that Plaintiff has an affirmative right to joinder in the circumstances in question such that the court cannot exercise its discretion under Indiana Trial Rule 20(A) differently. *See Todd by Todd,* 942 F.2d at 1176 (acknowledging that Indiana law "guarantees the right to join physicians as additional defendants in suits against non-health care providers"). The policy behind the statutory right is that it would be prejudicial to a medical malpractice claimant to require the claimant to litigate his claims against the qualified healthcare provider and the non-healthcare provider separately, when the former has argued in defense to the malpractice claims that the claimant's injuries were caused by the latter.

These principles are further driven home by the *Todd* case, where the non-healthcare provider defendant removed the action to federal court. The plaintiff argued that, given the joinder provision of the MMA, the healthcare provider defendant was an indispensable party, who could not yet be joined in the action due to the pending medical review panel proceedings,[28] and therefore the removed lawsuit should be "dismissed from federal court for lack of diversity jurisdiction." *Id.*

---

[28] *Todd* was decided before the MMA was amended to permit an injured claimant to commence a state court action for malpractice at the same time the claimant's proposed complaint is being considered by a medical review panel. *See* Ind. Code § 34-18-8-7 (added by Ind. P.L. 111-1998, Sec. 9, eff. July 1, 1999).

at 1176. The Seventh Circuit rejected the plaintiff's indispensable party argument insofar as federal law applied, while declining to decide whether state law should instead govern because it found that the plaintiff had waived that argument. *Id*. at 1176-77. But the Court called the question of whether Indiana's joinder rule in the Comparative Fault Act should be applied in federal court under *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a "very important and apparently very difficult question." *Id.* at 1177.

As the Seventh Circuit further explained in an extended footnote discussion of Indiana's statutory scheme for medical malpractice claims:

> [The plaintiff] has a strong argument that the Indiana Comparative Negligence Act should govern diversity actions in federal court for the statute is more than a mere form or mode of regulating litigation—it appears to possess substantive attributes. The Indiana Medical Malpractice Act, a companion statute [to the Indiana Comparative Negligence Act] that is binding in federal court, requires malpractice claims to be presented to a medical tribunal prior to institution of litigation. As a result, medical malpractice plaintiffs were unable to join physicians in suits against other parties because the statute of limitations on their other claims would have run before the medical review process had been completed. **The Comparative Negligence Act was enacted to prevent prejudice to such plaintiffs. It mandates that trial courts permit joinder of physicians as additional defendants** once malpractice review panel proceedings have come to a close. Read together, these two statutes thus embody a substantive compromise: Indiana has attempted to deter frivolous malpractice litigation while simultaneously protecting meritorious claims. As one primary drafter of the Comparative Negligence Act explained:
>
>> The medical malpractice statute creates a problem as to claims asserted against a defendant covered by the Medical Malpractice Act and a defendant not so covered. **Typically, the claims would be joined in one action.** One of the purposes would be to prevent the claimant from being whipsawed by two defendants, i.e., by a defendant physician blaming the other defendant, for example a drug company, and by the defendant drug company in turn blaming the physician. **This kind of finger pointing by defendants is likely to do the claimant no harm when it occurs in the same action.**

> **It may cause serious harm, however, when the defendants are sued in separate actions**…. Section 11 of the Act, added by Senate Bill 419, deals with this situation by simply providing that the claimant may sue the nonhealth care provider; then, upon request by the claimant, the court shall grant reasonable delays in that action until the medical review panel procedure has been completed. Thereafter, **the court is required to permit joinder of the qualified health care provider as an additional defendant.** Thus, a claimant who is worried that the drug company will succeed in laying the blame on the physician in the first action, and that the physician will succeed in tying the blame on the drug company in the later separate action has in section 11 an antidote for his worry.

*Id.* at 1177 n.2 (internal citations omitted, emphasis added).

Just as in *Todd*, if the Court were to "apply only the Medical Malpractice Act while ignoring [the] related [joinder] provision[ ] of the Comparative Negligence Act, [it] might undercut Indiana's substantive policy objectives. By allowing defendants to evade joinder in federal court, moreover, [it] may well encourage the very evils that *Erie* was meant to guard against—forum-shopping and inequitable administration of the laws." *Id.*

### (ii) *Cases applying Federal Rule 20 or an equivalent state rule*

Ethicon argues there is a misjoinder here based on case law outside this jurisdiction that does not take into consideration the compelling reasons for concluding that joinder is proper in this case based on the related statutory schemes of the MMA and Comparative Negligence Act. The Court does not find that case law persuasive to this case. In any event, however, even apart from the MMA and Comparative Negligence Act, the cases Ethicon cites can be distinguished factually.

For instance, some do not involve claims of defective medical products joined with medical malpractice claims against healthcare providers.[29]

In addition, a number of the cases Ethicon cites involve product liability claims against drug manufacturers where the plaintiff alleged that his or her healthcare providers were jointly liable with the drug manufacturer for injuries the plaintiff sustained from the drug based on the healthcare providers' negligence in prescribing or treating the plaintiff or failure to warn of risks or recognize harms caused by the drug. Some of these cases involve the claims of multiple plaintiffs against multiple defendants.[30] In one case, the court found misjoinder on the ground that the plaintiff's product liability claims related to the safety and efficacy of the drug had "little if

---

[29] *See, e.g., Crockett*, 436 F.3d at 530 (product liability claims against tobacco companies held improperly joined with claims against health care defendants alleging failure to diagnose the decedent's cancer); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 409-10 (S.D.W. Va. 2005) (claims against drug store for inadequate compliance with state statute requiring requests for production of medical records were "legally and factually too remote to sustain joinder" with claims against diverse defendants concerning the distribution of counterfeit pharmaceutical drug); *Asher v. Minn. Mining & Mfg. Co.*, No. CIV.A. 04CV522KKC, 2005 WL 1593941, at *8 (E.D. Ky. June 30, 2005) (claims against different manufacturers and different retailers of dust respirator and masks, where the 81 plaintiffs used products manufactured by various combinations of the defendants, were improperly joined because, among other things, facts relating to each defendant's product, knowledge, and warnings, were different).

[30] *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684 (D. Nev. 2004) (finding product liability claims against manufacturers of diet drug Fen-Phen improperly joined with malpractice claims against prescribing physician, stating that "the ingestion of medication among various Plaintiffs alone cannot constitute the 'same transaction or occurrence'"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Lit.*, 294 F. Supp. 2d 667, 677-78 (E.D. Pa. 2003) (finding that claims of a single New Jersey plaintiff against manufacturer of Fen-Phen diet drugs, also a New Jersey citizen, were fraudulently misjoined with claims by Georgia plaintiffs, where there were no allegations that a Georgia physician prescribed any diet drugs to the New Jersey plaintiff); *but compare Jackson v. Truly*, 307 F. Supp. 2d 818, 823-24 (N.D. Miss. 2004) (acknowledging that "there may well be joinder issues in this case, since obviously not all of the plaintiffs purchased Stadol from all of the defendant pharmacies and/or physicians," but finding joinder nonetheless proper under Mississippi's Rule 20, which, although containing language identical to federal Rule 20, "has been given a remarkably broad interpretation by the state courts when compared to the federal rule").

anything to do with the malpractice claim," which was based "on the physician's failure to diagnose [the] plaintiff's alleged liver dysfunction." *In re Rezulin Prods. Liab. Lit.*, 2003 WL 21276425, at *2. None of the cited pharmaceutical cases, however, involve a single, discrete occurrence that caused the injury like the injury in this case, which occurred as a result of Plaintiff's surgery and the immediate aftercare.[31]

Thus, the most factually relevant cases in this area are those involving medical devices implanted in the same surgery for which medical negligence is alleged. The cases falling in this category cited by Ethicon appear to be factually distinguishable. For instance, as previously discussed, *supra* note 27, *Stone v. Zimmer, Inc.*, 2009 WL 1809990, did not involve an allegation of joint and several liability. And two other medical device cases cited by Ethicon involve medical malpractice claims based on the allegation that the healthcare provider implanted a device that was

---

[31] In any event, many cases involving pharmaceutical product liability claims combined with medical malpractice claims reach the opposite result. *See, e.g., Tinsley*, 143 F. Supp. 3d at 458-62 (joinder held proper because medical malpractice and product liability claims all related to the plaintiff's use of acetaminophen, her subsequent injuries, and the alleged failure to warn of the risks of ingesting the drug); *Livingston*, 2009 WL 2448804, at *7 (stating that, "determining who is liable in cases … involv[ing] personal injury allegations against a pharmaceutical company and the plaintiff's physician, depends on a common question of fact—which defendants had what information," citing *Copeland v. Eli Lilly & Co.*, No. 05 C 4318, 2005 WL 3533394, at *5 (W.D. Mo. Dec. 22, 2005) ("Since [the physician] could not have negligently withheld from [the plaintiff] that which was withheld from him by [the pharmaceutical company], the chain of communication—and any breaks in it—from the drug manufacturer to the patient is a common issue of fact.")); *Alegre v. Aguayo*, No. 06 C 5744, 2007 WL 141891, at *6 (N.D. Ill. Jan. 17, 2007) (concluding that plaintiff's allegations that the pharmaceutical defendants inadequately disclosed the risks of Vioxx and that her physician prescribed an excessive amount of the drug were part of the same series of transactions or occurrences); *Johnson v. Glaxo Smith Kline*, 214 F.R.D. 416, 420 (S.D. Miss. 2002) (finding that there was "a palpable connection" between the product liability and medical malpractice claims because the plaintiffs alleged that the pharmaceutical defendant "represented that [the drug] was safe and its risks negligible," while the doctor defendants allegedly failed "to advise the plaintiffs of risks of use of" the drug); *Jamison*, 251 F. Supp. 2d at 1322–23 (product liability and medical malpractice claims arising from injuries that allegedly were the result of the use of Oxycontin properly joined because the plaintiffs alleged an injury resulting from the drug, and that the drug was negligently promoted by the pharmaceutical defendant and negligently prescribed to them by the healthcare provider defendant).

subject to a prior recall notice. *See Sutton v. Davol, Inc.*, 251 F.R.D. 500, 502 (E.D. Cal. 2008); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708 (DWF/AJB), 2007 WL 5377783, at *2 (D. Minn. June 4, 2007), *see also In re Stryker*, 2013 WL 6511855, at *2 (where the plaintiff alleged that "the Hospital Defendants, 'knew for years' before the Stryker Rejuvenate Hip System devices were recalled that 'patients were experiencing the symptoms discussed herein ... but concealed and/or misrepresented to Plaintiff and others similarly situated that the Stryker Rejuvenate Hip System was not defective'").

Even if these factual differences were insufficient to distinguish Ethicon's medical device cases,[32] the Court does not find them persuasive here, given the specific malpractice claims and allegations in Plaintiffs' complaint. Instead, *Stephens v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 807 F. Supp. 2d 375 (D. Md. 2011), is more on point. The *Stephens* court held that the plaintiff's medical malpractice claims bore a logical relationship to his product liability claims, explaining: "[The plaintiff] had a Pinnacle Cup System hip prosthesis implanted into his body during a surgery. He had subsequent surgeries to replace his initial prosthesis and to correct his hip replacement. Thereafter, [the plaintiff] suffered injuries allegedly as a result of

---

[32] Significantly, many of the cases finding misjoinder (including the medical device cases cited by Ethicon) were part of an MDL proceeding or transfer request, which, rightly or wrongly, appeared to factor into the court's joinder analysis. *See, e.g., In re Stryker*, 2013 WL 6511855, at 4 ("because of the nature, stage, and progression of this MDL, 'the rights of the parties and interest of justice is best served by severance'" (quoting Fed. R. Civ. P. 21)); *Sutton*, 251 F.R.D. at 505 (severing claims against nondiverse defendants "to preserve the interest of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum"); *In re Guidant Corp.*, 2007 WL 5377783, at *2 (remand motion considered by judge presiding over MDL); *compare Livingston*, 2009 WL 2448804, at *7 ("recogniz[ing] that the Pharmaceutical Defendants will be inconvenienced if they are forced to litigate …in state court, in light of the pending cases against them in the MDL," but nonetheless finding that joinder was proper). The Court is unaware of any MDL proceedings related to the claims in this case. *See Tinsley*, 143 F. Supp. 3d at 463 n.4 (in holding that joinder was proper, court notes that the "MDL factor" was not present in that case).

medical negligence, product malfunction, or a combination of the two. The medical malpractice and product liability claims are completely intertwined." *Id.* at 383.

Like in *Stephens*, here there is a logical relationship between the product liability claims and the medical malpractice claims in that Plaintiffs allege that Anonymous Healthcare Provider A used Surgicel in the surgery, and that the Surgicel migrated to Plaintiff's spine and caused spinal cord compression, which ultimately left Plaintiff paralyzed. The product liability claims and the medical malpractice claims have a logical relationship to each other because both sets of claims relate to the same transaction(s) or occurrence(s)—the surgery and Plaintiff's injuries from that surgery. While in the cases cited by Ethicon it might be argued that the malpractice claims were "logically separate" from the products liability claims, "the very genesis" of the injury before the Court is "the surgery and implantation of an allegedly faulty medical device in [Plaintiff's] body," such that the medical malpractice claims are "intertwined with the claims against [the product manufacturer], not separate and distinct" *Id.* at 383-84 (internal quotation marks omitted) (citing *Wyatt,* 651 F. Supp. 2d at 498 (holding that the plaintiff's product liability claims against the manufacturer of a defibrillator device and malpractice claims against treating healthcare providers "arise out of the same occurrence: [the plaintiff's] surgery and the after effects of that surgery")); *see also Wagner*, 2012 WL 1564133, at *3 (where plaintiff was injured when an allegedly defective surgical table used during her hospital treatment malfunctioned, court holds product liability claims against the table manufacturer and malpractice claims against the hospital "ar[o]se out of the same occurrence and operative facts" and thus were properly joined).

Similarly, the court found joinder to be proper in a pharmaceutical case but one that differs in one significant respect from the others cited by Ethicon: the drug was administered at a single discrete time. In *Ash v. Providence Hospital*, the plaintiff alleged injuries sustained as a result of a

heart catheterization and coronary bypass procedure during which he was administered the drug heparin to inhibit the formation of blood clots but which resulted in the plaintiff suffering a condition called heparin-induced thromocytopenia ("HIT syndrome"). 2009 WL 424586 at *1. In considering whether the plaintiff's negligence claims against the surgeon and hospital were properly joined with product liability claims, the court acknowledged that the plaintiff's "claims against the diverse pharmaceutical defendants are distinct in some respects from those against the non-diverse medical provider defendants. As to the former group, [the plaintiff] maintains that those defendants are liable because they, *inter alia*, failed to use due care in developing, manufacturing, and inspecting heparin. As to the latter group, [the plaintiff] seeks to hold them liable for, *inter alia*, failing to use due care in recognizing and treating the HIT syndrome that culminated in the amputation of his arm." *Id.* at *8. But the court went on to find that, while the "two sets of claims may be distinguishable, … they are also overlapping," because the plaintiff sought "recovery for a single injury, to wit, the personal injuries he sustained after being administered heparin during his surgery," such that the plaintiffs' claims "plainly arise from the same transactions or occurrences (namely, the surgery, the administration of heparin, and [the plaintiff's] ensuing medical complications)." *Id.*

Finally, even a cursory review of the allegations contained in the complaint reveals that Ethicon's assertion that "there are *no* common questions of fact or law between the medical malpractice and product liability theories" [DE 5 at 6 (emphasis added)], is in error. "[C]om[mon] questions of law and fact surround the issue of whether the Anonymous Defendants' alleged negligent treatment, an alleged defect in [Ethicon's] product, or some combination of the two, caused Plaintiff's injury." *Richmann,* Dkt. #46, slip op. at 4; *see also Stephens*, 807 F. Supp. 2d at 384 (stating that it was "abundantly clear that numerous questions of law or fact common to all

defendants will arise in this action"); *Wyatt*, 651 F. Supp. 2d at 498 ("The injuries themselves, the extent of the injuries, and what caused those injuries are common questions of fact that must be resolved as to both the Medical Defendants and [the product liability defendant]"); *Ash*, 2009 WL 424586, at *8 (the claims against the medical providers and those against the product liability defendants "undoubtedly share common issues of fact or law, including without limitation the causes, nature and extent of [the plaintiff's] injuries," as well as "[t]he nature and extent of [the product liability defendant's] warnings to the medical provider defendants," which are "directly relevant to whether those medical provider defendants conducted themselves negligently in treating [the plaintiff], administering [the medical product] to him [during the surgery], monitoring his condition, and recognizing and treating the [injury sustained by the plaintiff] when it arose").

In sum, the Court recommends that the fraudulent misjoinder doctrine, if it is adopted or assumed to apply, be found not applicable because Ethicon has not made any argument that the asserted misjoinder was egregious, because Indiana law grants Plaintiffs the right to joinder, and because there is no misjoinder in any event, egregious or otherwise.

### 3.    RULE 21

Ethicon's last argument for diversity jurisdiction in this case is that the Court can exercise its discretion under Rule 21 of the Federal Rules of Civil Procedure to sever and remand Plaintiffs' claims against the Anonymous Defendants, even if those claims are not fraudulently misjoined.[33] *See* [DE 1 ¶¶ 33, 36]. Ethicon cites *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989), for the proposition that "Rule 21 invest[s] district courts with authority to allow a dispensable nondiverse party to be dropped at any time[.]" *See* [DE 1 ¶ 31]. Plaintiffs respond that

---

[33] *See* Fed. R. Civ. P. 21 ("Misjoinder and Nonjoinder of Parties … On motion or on its own, the court may, at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

this Court has no jurisdiction over the case, and, therefore, no occasion to consider whether to exercise its discretionary authority under Rule 21 to sever the parties and the claims. The Court agrees with Plaintiffs.

Rule 82 of the Federal Rules of Civil Procedure states that "[t]hese rules do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82. Courts have held that "a district court may run afoul of Rule 82 when it uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed*. Such a reshaping of the action by the district court creates jurisdiction where it did not previously exist." *Jamison*, 251 F. Supp. 2d at 1321 n.6 (emphasis in original); *see also Halliburton v. Johnson & Johnson,* 983 F. Supp. 2d 1355, 1359–60 (W.D. Okla. 2013) ("For this court to rule on joinder issues before determining whether it has subject matter jurisdiction puts the cart before the horse; Rule 82 of the Federal Rules of Civil Procedure does not permit the court to fashion subject matter jurisdiction by using the federal rules governing joinder and severance."), *aff'd sub nom. Parson v. Johnson & Johnson*, 749 F.3d 879 (10th Cir. 2014); *Echols v. Omni Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010) (concluding "that severance [of the claims against the nondiverse defendant using Rule 21] . . . would constitute an impermissible use of the federal rules to extend federal diversity jurisdiction under Rule 82"); *Lyons*, 2004 WL 2272203, at *6 (finding that "[t]he use of Rule 21 to expand a federal court's jurisdiction … does not appear to be an option" given Rule 82); *Ferry v. Bekum Am. Corp.,* 185 F. Supp. 2d 1285, 1290 (M.D. Fla. 2002) (holding that Rule 21 should not be used to "allow a district court to 'create' jurisdiction on removal simply by dismissing nondiverse, dispensable plaintiffs against their wishes"); *Spann v. Nw. Mut. Life Ins. Co.*, 795 F. Supp. 386, 391 (M.D. Ala. 1992) (declining to sever claims against non-diverse defendant on the ground that doing so "would be appropriate only if the court has

jurisdiction," which it did not); *Perry v. Norwest Fin. Ala., Inc.,* No. CIV.A. 98-0260-CB-C, 1998 WL 964987, *3 (S.D. Ala. Dec. 9, 1998) (refusing to sever claims against non-diverse defendants and characterizing removing defendant's argument in favor of severance as an "attempt[ ] …to climb in the window of federal court" where jurisdiction was lacking).

"Rule 21 is a tool to maintain federal jurisdiction, not to create it." *Zepik v. Tidewater Midwest, Inc*., 719 F. Supp. 751, 755 (N.D. Ind. 1989). "Rule 21 has been used by plaintiffs to dismiss nondiverse, dispensable defendants from an action brought in federal court to preserve diversity jurisdiction, as well as to dismiss dispensable co-plaintiffs," and it "has also been used to preserve subject matter jurisdiction after judgment has been reached." *Ferry,* 185 F. Supp. 2d at 1290 (citing cases).[34] "Rule 21 has not been used, however, to dismiss properly joined plaintiffs, despite their objections, solely to permit a defendant to acquire federal jurisdiction and remove the proceeding from the state forum in which it was originally brought." *Id.* (internal quotation marks and citation omitted); *see also Cicero v. Am. Family Mut. Ins. Co.*, No. C19-1457-JCC, 2019 WL 6716787, at *3 (W.D. Wash. Dec. 10, 2019); *Rouse v. State Farm Mut. Auto. Ins. Co.,* No. 1:14-cv-690, 2015 WL 3849648, at *5 (M.D.N.C. June 22, 2015); *Baker v. Johnson & Johnson,* 709 F.  Supp. 2d 677, 690–91 (S.D. Ill. 2010); *Livingston*, 2009 WL 2448804, at *6 n.3; *Garbie v. Chrysler Corp*., 8 F. Supp. 2d 814, 817–18 (N.D. Ill. 1998).

---

[34] The cases Ethicon cites fall within one of these categories. *See, e.g., Newman-Green, Inc.,* 490 U.S. at 837-38 (affirming the Seventh Circuit's decision to grant the plaintiff's motion on appeal to dismiss diversity destroying defendant in order to preserve district court's judgment against diverse co-defendant); *Soberay Mach. & Equip. Co. v. MRF Ltd.,* 181 F.3d 759, 763 (6th Cir. 1999) (Rule 21 used to cure diversity defect for complaint originally filed in federal court); *Safeco Ins. Co. v. City of White House, Tenn.*, 36 F.3d 540 (6th Cir. 1994) (diversity jurisdiction existed when the case was originally filed in federal court, and was only lost after the court realigned the parties; court drops nondiverse co-defendant who had been realigned as a plaintiff in order maintain diversity jurisdiction over the counterclaim).

Ethicon's contrary interpretation of Rule 21 and *Newman-Green* was rejected by Judge Robert L. Miller, Jr. of this District, who said such an interpretation "would utterly eviscerate the concept of complete diversity. … [A] federal court could create subject matter jurisdiction from thin air in any case in which a plaintiff made the mistake of suing at least *one* diverse defendant, essentially turning the requirement of complete diversity into one of minimal diversity. This can't be so; '[f]ederal courts are courts of limited jurisdiction' and 'cannot create jurisdiction where [they] have none.' When a plaintiff chooses to file valid state law claims in state court against a set of defendants not completely diverse from the plaintiff, the federal courts have no constitutional or statutory power to seize control of the case." *In re: Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, MDL 2391, 2016 WL 3901366, at *7 (N.D. Ind. July 18, 2016) (citations omitted, emphasis in original). The Court agrees with Judge Miller's analysis of the issue. If complete diversity did not exist when the case was filed or when the case was removed, the Court cannot create it by reconfiguring the case at the removing defendant's request in the face of Plaintiffs' opposition.

## C.   ATTORNEY FEES AND COSTS

In the concluding section of Plaintiffs' Brief in Support of Their Motion to Remand To State Court, Plaintiffs ask the Court for an award of attorney fees and costs. *See* [DE 22 at 21]. However, Plaintiffs have not provided any argument supporting their request for attorney fees and costs. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that, under § 1447(c), "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005); *see also*

*Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir. 2007). Plaintiffs have not attempted to argue that Ethicon's decision to remove the case was "objectively unreasonable," and the Court will not venture down that road on its own, especially given the conflicting case law discussed above. Accordingly, the Court recommends that the request for attorney fees and costs be denied.

## II.   ETHICON'S MOTION TO SEVER [DE 5]

Also before the Court is Ethicon's separately filed motion to sever seeking to sever the medical malpractice claims against the Anonymous Defendants from the product liability claims against Ethicon pursuant to Federal Rule of Civil Procedure 21. The Court denies Ethicon's motion to sever for the same reasons given in the Court's report and recommendation on Plaintiffs' motion to remand, namely that the Court lacks subject matter jurisdiction to sever under Rule 21 for purposes of creating federal jurisdiction where it otherwise does not exist. Alternatively, even if the Court had subject matter jurisdiction, severance would not be appropriate because the equities weigh heavily against severing Plaintiffs' product liability claims from their medical malpractice claims.

"[T]he determination whether to sever is within the trial judge's broad discretion … so long as the two claims are 'discrete and separate.'" *Harleysville Lake States Ins. Co. v. Granite Ridge Builders, Inc.*, No. 1:06-CV-397-TS, 2010 WL 1064486, at *2 (N.D. Ind. Mar. 18, 2010) (citations omitted). "[F]actors courts consider when analyzing a motion to sever under Rule 21 include (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Dada v. Wayne Twp. Tr.'s Off.*, No. 1:07-CV-274, 2008 WL 2323485, at *2 (N.D. Ind.

May 30, 2008) (internal quotation marks and citation omitted). "The Rule 21 provision regarding severance of claims must also be read in the context of Rule 18, which establishes a policy favoring joinder of claims as long as the requirements for joinder of parties have been satisfied under Rule 20." *Harleysville Lake States Ins. Co.,* 2010 WL 1064486, at *2. With these principles in mind, the Court is unpersuaded by Ethicon's argument for severance.

To begin with, as one court has observed, "sever[ing] the action into sets of diverse and non-diverse defendants, retaining subject-matter jurisdiction over the diverse defendants and remanding the rest, … would undermine the goals of comity and federalism that underlie the limited exercise of subject-matter jurisdiction by federal courts." *S. Insulation, Inc. through Protopapas*, 2022 WL 16798468, at *2 (referring to severance in this situation as a "Frankensteinian approach"). Moreover, as previously discussed in the report and recommendation on Plaintiffs' motion to remand, the claims and defenses in this case arise out of the same transaction or occurrence and present some common questions of law and fact. Therefore, judicial efficiency is best served by litigating the claims in a single action. "To subdivide this lawsuit into two separate cases would be highly inefficient, and would render this litigation more cumbersome and fragmented. [Plaintiffs] would be required to fight a war on two fronts, litigating some of the very same issues in both fora with the potential for inconsistent results as to those overlapping issues. These concerns of prejudice to [Plaintiffs], as well as those of preserving judicial economy and the Court's reluctance to manufacture federal jurisdiction via artificial means in a case where none exists, all militate strongly against severing the claims in the manner requested by [Ethicon]." *Ash*, 2009 WL 424586, at *9 n.19; *see also Baker v. Tri-Nations Express, Inc.*, 531 F. Supp. 2d 1307, 1318 (M.D. Ala. 2008) ("This court is similarly convinced that any

Rule 21 discretion to dismiss parties and sever claims … does not … promote judicial economy where all of the claims arise out of one accident.").

Most important, the Supreme Court warned in *Newman-Green, Inc.* that a Rule 21 severance should be used "sparingly" to create diversity jurisdiction, and that a court "should carefully consider whether dismissal of a nondiverse party will prejudice any of the parties in the litigation." 490 U.S. at 837, 838; *see In re: Biomet M2a*, 2016 WL 3901366, at *8. Here severance would prejudice Plaintiffs for a number of reasons. First, it would contravene the policy favoring plaintiff's right, absent limited exceptions, to determine the removability of the case. Ethicon argues that its statutory right of removal should prevail over Plaintiffs' choice of forum. *See* [DE 1 ¶ 35]. But the Court disagrees. Ethicon's statutory right of removal is dependent on whether grounds for federal court jurisdiction exist; it does not extend to cases in which jurisdiction must be created by the court. As one court stated in response to a similar argument that the court should sever the claims at issue in order to "protect [the defendants'] 'statutory right to a federal forum,'" "the exercise of discretion under Rule 21 does not involve a balancing test between the plaintiff's right to forum choice and the defendant's right to removal." *Rouse*, 2015 WL 3849648, at *5. Instead, "[d]ue to the significant federalism concerns implicated by removal, courts are obliged to construe removal jurisdiction strictly," and "if federal jurisdiction is doubtful, a remand to state court is necessary." *Id.* (internal quotation marks and citations omitted). Ethicon "can remove a case to federal court only when the federal court has subject matter jurisdiction over the case," and thus, its "right to a federal forum ended with [its] failure to establish … complete diversity in this case." *Id.*

The Seventh Circuit has explained, "[e]ven if the [nondiverse defendants] were added to prevent removal, that is their privilege; plaintiffs as the masters of the complaint may include (or

omit) claims or parties in order to determine the forum. Neither § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal." *Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407, 410 (7th Cir. 2000) (internal citations omitted). A severance would prejudice Plaintiffs by forcing them to pursue their lawsuit in two different courts and face the risk of inconsistent or conflicting judgments. *See Sta–Rite Indus., Inc. v. Allstate Ins. Co*., 96 F.3d 281, 286-87 (7th Cir. 1996) (holding that the potential for inconsistent rulings between federal and state courts and the potential for an inequitable result creates substantial prejudice to a party and precludes the federal courts from affording complete relief); *Tinsley,* 143 F. Supp. 3d at 463 ("the considerations of fairness to parties, trial convenience, and efficient administration of justice all weigh in favor of it declining to sever the claims against both sets of defendants"); *Echols*, 751 F. Supp. 2d at 1216 ("assum[ing]—without deciding—that [the nondiverse defendant] is not necessary or indispensable under Rule 19, and is not essential to a 'just and meaningful adjudication,'" but concluding that, even with that assumption, severance would be inappropriate); *John S. Clark Co. v. Travelers Indem. Co. of Ill.*, 359 F. Supp. 2d 429, 441 (M.D.N.C. 2004) ("Based on considerations of fundamental fairness, judicial economy, prejudice, and undue delay, as well as the dual threat of duplicitous litigation and inconsistent verdicts, the court concludes that the Herrera Defendants should remain in this civil action as defendants properly joined under Federal Rule of Civil Procedure 20(a)."); *see also Cicero*, 2019 WL 6716787, at *3; *Lyons*, 2004 WL 2272203, at *6 & n.4; *Ferry*, 185 F. Supp. 2d at 1290 n.9.

"[W]hen a singular harm was caused by two or more entities then the interests of justice will normally point toward their being sued together." *Spann*, 795 F. Supp. at 391. Particularly in

light of Indiana's statutory scheme for medical malpractice claims discussed previously, a discretionary severance is not warranted.[35]

## III.   **THE ANONYMOUS DEFENDANTS' MOTION TO STAY [DE 16]**

The Anonymous Defendants' joint motion to stay seeks an order staying the case pursuant to the MMA. Specifically, the motion seeks an order "[s]taying this case as to the Anonymous Defendants while the matter is pursued through the medical review panel process except to the extent that the parties seek to address questions pertaining to: (a) preliminar[y] determinations of law on affirmative defenses or issues of law or fact that may be preliminarily determined under the Indiana Rules of Procedure; or (b) to compel discovery in accordance with the Indiana Rules of Procedure." [DE 16 at 4]. The Anonymous Defendants further request that the Court order "[t]hat the Anonymous Defendants shall have 30 days after the Plaintiffs file a motion to lift the stay and amend their complaint to name any defendants after the Medical Review Panel Opinion has been issued." [*Id.*].[36]

Plaintiffs argue in their opposition to the Anonymous Defendant's motion to stay that the Court "must preliminarily address whether it even has subject matter jurisdiction of this case before ruling on the merits of" the motion to stay. [DE 26 at 1]. The Court agrees insofar as a stay

---

[35] Relatedly, granting a severance for the purpose of allowing a diverse defendant to remove a case to federal court would appear to violate the "voluntary-involuntary" rule, pursuant to which, if the nondiverse defendant is dismissed from the case by the voluntary act of the plaintiff, the case becomes removable, but if the dismissal is the result of either the defendant's or the court's action against the wish of the plaintiff, the case cannot be removed. *See Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 71 (7th Cir. 1992). While a severance granted by the state court pursuant to a finding that joinder was *improper* may allow the case to be removed notwithstanding the voluntary-involuntary rule, *see Crockett,* 436 F.3d at 533, the voluntary-involuntary rule would likely still apply to prevent removal based on a discretionary severance of otherwise properly joined claims, *see Vogel v. Merck & Co.,* 476 F. Supp. 2d 996, 999-1001 (S.D. Ill. 2007); *Spann,* 795 F. Supp. at 390-91.

[36] As to the second request for relief in the motion to stay, the Court agrees with Plaintiffs that "it is not quite clear what relief Defendants seek." [DE 26 ¶ 5].

under the MMA is concerned. However, the Court "undoubtedly ha[s] 'jurisdiction to determine its own jurisdiction.'" *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 199 (5th Cir. 2021) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). And in connection with those proceedings, the Court "has incidental power to stay proceedings, which stems from its inherent power to manage its docket." *Jackson v. Zormier*, No. 2:20-CV-45, 2020 WL 1899815, at *1 (N.D. Ind. Apr. 17, 2020) (citing *inter alia Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936))). "The decision to grant a stay is committed to the sound discretion of the court and must be exercised consistent with principles of fairness and judicial economy." *Id.*

At a status conference held on June 28, 2022, the Court stayed all further proceedings and deadlines until a final ruling on the pending motions. *See* [DE 40]. Plaintiffs' opposition brief argues that the MMA does not require a stay of the deadline for the Anonymous Defendants to file a responsive pleading and that Plaintiffs are prejudiced by any stay that would apply to that deadline. [DE 26 at 4-6]. The Court has taken these arguments into consideration in determining whether to continue the stay currently in place. The Court is sympathetic to Plaintiffs' concerns but nonetheless is of the opinion that the best course is to continue the stay as to all deadlines and discovery in this matter until such time as the motion to remand is finally resolved.

Accordingly, the Anonymous Defendants' motion to stay pursuant to the MMA is denied without prejudice. Upon the issuance of a final order on the motion to remand, the stay entered by the Court pursuant to its discretionary authority to control its own docket is automatically lifted and the case will proceed until such time as either this Court or the state court enters another stay order pursuant to any renewed motion filed by the Anonymous Defendants. If the motion to remand is granted, then the Porter County Superior Court can address the issue of whether the Anonymous Defendants are entitled to a stay under the MMA. If the case is not remanded and the

Anonymous Defendants continue to believe that a stay of proceedings is appropriate, they should revisit the issue by filing an appropriate motion in this Court setting forth the then-current status of the medical review proceedings and other relevant factual circumstances.[37]

## CONCLUSION

For the reasons discussed above,

(1)    The Court **RECOMMENDS** that Plaintiffs' motion to remand **[DE 21]** be **GRANTED IN PART AND DENIED IN PART**, with Plaintiffs' request to remand being granted but their request to recover attorney fees and costs being denied.

(2)    Defendant Ethicon's motion to sever **[DE 5]** is **DENIED**.

(3)    The Anonymous Defendant' joint motion to stay **[DE 16],** is **DENIED** without prejudice.

(4)    The Court **VACATES** the stay of the entire case that was entered on June 28, 2022 [DE 40], but discovery and any deadlines will continue to be **STAYED** until such time as a final order by this Court is entered on Plaintiffs' motion to remand.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc*., 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor*

---

[37] At a status conference on August 18, 2022 the parties reported that all submissions had been made to the medical review board, and that the parties are merely waiting on a decision from that body. To date, the Court is not aware that any decision by the medical review panel has been issued.

*Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 12th day of December, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT